**Larry Eugene MANN,
Petitioner-Appellant,**

v.

**Richard L. DUGGER, Secretary, Florida Department of Corrections,
Respondent-Appellee.**

No. 86–3182.

United States Court of Appeals,
Eleventh Circuit.

May 14, 1987.

---

Larry H. Spalding, Office of Capital Collateral Representative, Michael A. Mello, Mark Evan Olive, Billy H. Nolas, Tallahassee, Fla., for petitioner-appellant.

Michael Kotler, Gary Welch, Asst. Attys. Gen., Office of Atty. Gen., Tampa, Fla., for respondent-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

JOHNSON, Circuit Judge:

## I

## BACKGROUND

This case concerns an appeal from a denial of a writ of habeas corpus. Larry Eugene Mann was convicted in 1981 in a Florida state circuit court of first degree murder and kidnapping and sentenced to death. Because the Florida Supreme Court's opinion on direct appeal adequately provides the facts of this case, we will not detail those facts here. On direct appeal, the Florida Supreme Court affirmed the convictions but reversed the imposition of the death sentence. *Mann v. State,* 420 So.2d 578 (Fla.1982). On resentencing, the circuit court reimposed the death penalty, and the Florida Supreme Court subsequently affirmed the resentencing. *Mann v. State,* 453 So.2d 784 (Fla.1984), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). After failing to receive executive clemency, Mann filed a motion to vacate the judgment and sentence pursuant to Fla. R.Crim.P. 3.850. Both the circuit court and the Florida Supreme Court denied him any relief. The Florida Supreme Court denied his petition for a writ of habeas corpus as well. *Mann v. State,* 482 So.2d 1360 (Fla. 1986).

Mann then filed a petition for a writ of habeas corpus and a stay of execution in the United States District Court for the Middle District of Florida. The district court granted a stay of execution but after oral argument denied any habeas relief. This appeal followed. In this appeal Mann challenges his conviction on the sole ground that he was involuntarily absent from the jury's presence during their viewing of the crime scene. However, he raises several claims challenging his sentence. We deny any relief as to his conviction but hold that he is entitled to resentencing.

## II

## DISCUSSION

### A. INVOLUNTARY ABSENCE

Mann claims that his absence from the jury's presence when they viewed the scene of the crime violated his rights under the Sixth, Eighth and Fourteenth Amendments because the police officer showing the scene to the jury pointed out changes that had occurred since the crime. Although Mann raised this claim in his Rule 3.850 motion, the district court dismissed it as procedurally barred because Mann failed to raise it on direct appeal. We conclude, however, that the district court erred in finding this claim to be barred.

The failure to raise a claim on direct appeal that was required under state law to be raised on direct appeal precludes federal

habeas review of that claim. *Murray v. Carrier,* — U.S. —, 106 S.Ct. 2639, 2646–48, 91 L.Ed.2d 397 (1986); *Reed v. Ross,* 468 U.S. 1, 10–12, 104 S.Ct. 2901, 2907–2908, 82 L.Ed.2d 1 (1984). Under Florida law, a claim that the defendant was involuntarily absent from the presence of the jury must be raised on direct appeal if the defendant objected to the trial court about his absence. *Middleton v. State,* 465 So.2d 1218, 1226–27 (Fla.1985); *Johnson v. Wainwright,* 463 So.2d 207, 212 (Fla.1985).[1] Because defense counsel objected when the police officer began pointing out changes in the crime scene, Mann's failure to raise this claim on direct appeal ordinarily would preclude federal habeas review. However, if the state supreme court on direct appeal overlooked Mann's failure to raise his presence claim and *sua sponte* passed on its merits, federal habeas review would not be barred. *Lefkowitz v. Newsome,* 420 U.S. 283, 292 n. 9, 95 S.Ct. 886, 891 n. 9, 43 L.Ed.2d 196 (1975) (citing *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)). *See also Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985) (no procedural bar to direct review where state supreme court *sua sponte* raised claim on direct appeal).

On direct appeal Mann raised only one claim challenging his conviction—the admission of the fact that bloodstains found at the crime scene and on the seat of his truck matched the bloodtype of the victim. However, in affirming Mann's conviction, the Florida Supreme Court stated:

In addition to this claimed trial error we have independently reviewed the record to assure ourselves of the propriety of the conviction. We find the convic-

tion supported by competent, substantial evidence, free from substantive error, and affirm it.

*Mann,* 420 So.2d at 580. This statement must be assessed in light of the fact that in capital cases the Florida Supreme Court exercises a special scope of review enabling it to excuse procedural defaults. *See Elledge v. State,* 346 So.2d 998, 1002 (Fla. 1977) ("Admittedly the testimony ... was not objected to by appellant's trial counsel, but that should not be conclusive of the special scope of review by this Court in death cases."). Thus, "where the state court's opinions do not make it clear that a point is not passed on due to failure to preserve it by timely objection, the state must be presumed to have applied its own rules to reach and reject the claim on the merits." *Henry v. Wainwright,* 686 F.2d 311, 314 (5th Cir. Unit B 1982), *vacated and remanded,* 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1407, *rev'd in part on other grounds,* 721 F.2d 990 (1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984). Consequently, we conclude that, by independently reviewing the record, the Florida Supreme Court waived Mann's failure to raise his presence claim on direct appeal. Although the state court in *Caldwell* discussed at length the merits of the issue it raised *sua sponte,* the Florida Supreme Court's opinion does not clearly rest on adequate and independent state grounds; therefore, federal habeas review is not barred.[2]

Due process guarantees a defendant the right to be present during any proceeding where his presence has a reasonably substantial relationship to his ability to conduct his defense. *United States*

---

1. Mann refutes this proposition, arguing that in both *Capers v. State,* 479 So.2d 187, 188 (Fla. Dist.Ct.App.1985), *review denied,* 491 So.2d 280 (Fla.1986), and *Cole v. State,* 181 So.2d 698, 699–701 (Fla.Dist.Ct.App.1966), the defendant was allowed to raise such a claim for the first time in a Rule 3.850 motion. Both *Capers* and *Cole* are premised on the fact that, because a defendant must object to the trial court about his absence from the jury's presence, such claims cannot be raised for the first time on direct appeal. *See Johnson v. State,* 267 So.2d 114, 114 (Fla.Dist.Ct.App.1972) (claim raised for first time on direct appeal dismissed without

prejudice to defendant's right to obtain relief through Rule 3.850 motion). However, defense counsel here did object at trial to the taking of testimony in Mann's absence. Therefore, Mann was required to raise his presence claim on direct appeal.

2. Because of our holding that the Florida Supreme Court addressed the merits of this claim on direct appeal, we need not address Mann's other argument that this claim is not barred because the Florida Supreme Court addressed its merits in dismissing his Rule 3.850 motion.

v. Gagnon, 470 U.S. 522, 526–27, 105 S.Ct. 1482, 1484–85, 84 L.Ed.2d 486 (1985); Snyder v. Massachusetts, 291 U.S. 97, 105–06, 108, 54 S.Ct. 330, 332, 333, 78 L.Ed. 674 (1934). Relatedly, the Sixth Amendment's right to confrontation, as incorporated into the Fourteenth Amendment, guarantees a defendant the right to be present when a witness is testifying against him during trial. Dutton v. Evans, 400 U.S. 74, 79, 91 S.Ct. 210, 214, 27 L.Ed.2d 213 (1970); Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970).

■ Mann argues that the jury view violated these rights because, instead of merely showing the scene to the jury, the police officer pointed out changes in the condition of the grass and leaves. The officer also described the search the police conducted at the site. In Snyder, 291 U.S. at 118, 54 S.Ct. at 336, the Supreme Court stated that a jury's viewing of the crime scene in the defendant's absence violates the defendant's right to be present if any changes in the scene since the crime are pointed out. Consequently, the police officer's description of changes in the crime scene violated Mann's right to be present. The officer's description of the search equally impinged Mann's right to be present.

■ Nonetheless, Mann is not entitled to relief if his absence was harmless error. Rushen v. Spain, 464 U.S. 114, 117–20, 104 S.Ct. 453, 454–57, 78 L.Ed.2d 267 (1983); Snyder, 291 U.S. at 118, 54 S.Ct. at 336. A violation of a defendant's right to be present cannot be considered harmless er-

ror if there is any reasonable possibility of prejudice resulting from the defendant's absence. Proffitt v. Wainwright, 685 F.2d 1227, 1260 (11th Cir.1982), modified, 706 F.2d 311, cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983). Here defense counsel was present during the viewing to safeguard Mann's rights as well as to relate the officer's testimony to Mann. See United States v. Stratton, 649 F.2d 1066, 1080–81 (5th Cir. Unit A 1981) (presence of defense counsel relevant to finding harmless error). Furthermore, Mann cross-examined the officer in court as to his testimony during the viewing. Mann has not indicated that the officer's description of the changes or the search was incorrect in any way or that his ability to cross examine the officer was hindered by his absence from the jury viewing. Nor do we believe that the changes pointed out and the scope of the search were relevant to the jury's decision. See Snyder, 291 U.S. at 118, 54 S.Ct. at 336 (harmless error where changes pointed out had no bearing on verdict). Therefore, because a reasonable possibility that Mann was prejudiced in his ability to defend himself does not exist, his absence during the jury viewing constitutes harmless error.

## B. COMMENT ON RIGHT TO REMAIN SILENT

During the sentencing phase, Lieutenant Judson Brooks testified that Mann did not show any remorse following his previous arrest for burglary in Mississippi.[3] Mann

---

3. On direct examination Officer Brooks testified:

Q: When you read that warrant to him, were you looking at him?
A: Yes, sir.
Q: Did he display any remorse at that time?
A: No, sir.
Q: Did he display any regret at that time?
A: No, sir.
Q: Did he display any sorrow?
A: No, sir.
Q: Subsequent to that, did you drive back to Passagoula [sic], Mississippi, with him in your presence?
A: Yes, sir.
Q: During that entire time period, did the man show any emotion at all?
A: In reference to the charges, no. The only emotion he ever showed was an occasion

in Daytona Beach when we stopped for dinner, and he became emotionally upset because I would not let him have beer with his meals.
Q: That's the only time he ever showed emotion, when you wouldn't let him drink beer with his dinner?
A: That's correct.
Q: That was after he was arrested on the charges you just read?
A: Yes.
Officer Brooks did not indicate at trial whether he read Mann his Miranda rights. However, Brooks stated in his affidavit filed with the district court that, although he could not specifically recall when he advised Mann of his Miranda rights, he normally advises defendants of those rights immediately upon their arrest.

argues that this testimony violated his Fifth Amendment right to remain silent. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (use of defendant's post-*Miranda* silence to impeach defendant at trial violates Fourteenth Amendment).

The district court found this claim to be procedurally barred because Mann failed to object at trial to the testimony and because Mann failed to raise this claim on direct appeal. Mann argues, however, that this claim is not barred because, in deciding his Rule 3.850 motion, the Florida Supreme Court ignored the procedural default and addressed its merits. *See, e.g., Oliver v. Wainwright*, 795 F.2d 1524, 1528 (11th Cir. 1986) (federal habeas review allowed if state court overlooks procedural bar to Rule 3.850 review and decides issue on the merits); *Campbell v. Wainwright*, 738 F.2d 1573, 1576–77 (11th Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986) (accord). We agree.

Mann raised numerous claims including this one in his Rule 3.850 motion. In affirming the trial court's dismissal of that motion, the Florida Supreme Court first discussed the merits of Mann's ineffective assistance of counsel claim. Then it stated:

> We see no need or benefit in discussing in detail the remainder of Mann's claims in his 3.850 motion. We do reject his contention that it is appropriate in a collateral attack on his sentence of death to attempt to collaterally attack Mann's prior conviction of a crime of violence in Mississippi; neither is it error to fail to delay the execution of his sentence prior to a ruling in Mississippi on any collateral attack in that state.
>
> It is clear that present counsel's complaint of trial counsel's handling of the trial would not have affected the truth-seeking process, the evaluation of the evidence, the proper application of the law, or the outcome of the case. A comparison of the original trial record clearly and conclusively refutes any claim that there was constitutional infirmity in the

trial. The same is true of the appellate process.
*Mann*, 482 So.2d at 1361–62.

█ This is not a case in which the state supreme court summarily denied collateral relief without comment, forcing this court to infer from that court's silence whether the denial was on procedural grounds or on the merits. *See, e.g., Hargrave v. Wainwright*, 804 F.2d 1182, 1187–88 (11th Cir. 1986). To the contrary, the Florida Supreme Court's language here strongly bespeaks a decision on the merits with no indication that this claim was procedurally barred. In *Campbell*, 738 F.2d at 1577, the court reviewed the merits of every claim the petitioner raised in his Rule 3.850 motion where, although the Florida Supreme Court in its denial of that motion stated that some claims were dismissed on procedural grounds and others on the merits, it did not identify the claims that fell into each category. Because the language here is less ambiguous than that in *Campbell*, we conclude that federal habeas review of the merits is warranted.

█ However, we need not decide whether Officer Brooks impermissibly referred to Mann's post-*Miranda* silence for, even assuming *arguendo* that he did, his comments constituted harmless error. *See, e.g., United States v. Puig*, 810 F.2d 1085, 1088 (11th Cir.1987); *United States v. Suggs*, 755 F.2d 1538, 1540–41 (11th Cir. 1985). We observe initially that Officer Brooks's testimony was not introduced to prove Mann's guilt or to impeach an exculpatory statement by Mann. The state used it during the sentencing phase only to establish aggravating circumstances. However, Officer Brooks's testimony had a minimal, if any, impact on Mann's sentence. The prosecutors did not refer in their closing arguments to Mann's lack of remorse for committing the prior offense. *Compare United States v. Harp*, 536 F.2d 601, 602–03 (5th Cir.1976) (*Doyle* violation where prosecutor highlighted in closing argument defendant's post-*Miranda* silence). Nor did the trial court refer to it in its findings. Although the trial court did find

Therefore, we treat Officer Brooks's testimony as referring to Mann's post-*Miranda* behavior.

as an aggravating circumstance that Mann had been previously convicted of a violent felony, whether Mann had shown remorse for committing that crime was irrelevant to that finding. Furthermore, the trial court found two other aggravating circumstances—that the murder was committed during the course of a kidnapping and that the murder was especially heinous, atrocious, and cruel—and only one mitigating circumstance—that Mann suffered from psychotic depression and paranoid feelings of rage. If Mann's psychological difficulties were insufficient to overcome the effect of the three aggravating circumstances, it is unlikely that the trial court would have assessed matters differently had Officer Brooks not testified, especially given that there was no affirmative proof that Mann was remorseful for having committed the crime. Therefore, it is clear beyond a reasonable doubt that the trial court would have sentenced Mann to death even if Officer Brooks had not testified regarding Mann's lack of remorse.

### C. *ENMUND* VIOLATION

Mann argues that his death sentence violates *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed.2d 1140 (1982), in which the Supreme Court ruled that "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed" cannot be sentenced to death. Because Mann did not raise this claim before the trial court or on direct appeal, the district court held that federal habeas review was

barred, even though Mann had raised it in his Rule 3.850 motion. As discussed in the preceding section, however, the Florida Supreme Court overlooked the procedural bar in denying Mann collateral relief and dismissed his claims on the merits. Consequently, federal habeas review is warranted.[4]

■ Nonetheless, Mann is not entitled to relief on this claim. Mann contends that, because the jury was instructed as to both felony murder and premeditated murder, but returned only a general verdict of guilty, he cannot be sentenced to death because the jury may have convicted him solely on the felony murder theory. However, this Circuit has specifically rejected the argument that *Enmund* prohibits the imposition of the death penalty on a defendant convicted of felony murder who actually committed the murder. *Griffin v. Wainwright*, 760 F.2d 1505, 1519–20 (11th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1992, 90 L.Ed.2d 672 (1986); *Hitchcock v. Wainwright*, 745 F.2d 1332, 1340 (11th Cir.1984), *aff'd*, 770 F.2d 1514 (1985) (en banc), *cert. granted in part*, — U.S. —, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986); *Adams v. Wainwright*, 709 F.2d 1443, 1446–47 (11th Cir.1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). Mann acted alone and actually did kill the victim. Therefore, because either theory upon which the jury may have relied was adequate to invoke the death penalty, Mann's sentence of death does not contravene the principles enunciated in *Enmund*.

### D. JURY INSTRUCTION

Mann argues that the trial court erred in refusing to give a requested jury instruc-

---

**4.** Federal habeas review would be warranted even if the Florida Supreme Court had dismissed this claim as procedurally barred. In *Reynolds v. State*, 429 So.2d 1331, 1333 (Fla. Dist.Ct.App.1983), the court held that a sentence imposed in excess of the maximum allowed by law constitutes fundamental error that can be raised for the first time in a Rule 3.850 motion. In *Reynolds*, the defendant was sentenced for his role in an armed robbery under a statute that imposes a heightened sentence on persons who commit a felony in actual possession of a firearm. If, as the defendant in that case claimed, he only vicariously possessed a firearm as a participant in the robbery, his heightened

sentence was fundamental error and could be challenged on that basis for the first time in a Rule 3.850 motion. Likewise, the premise of *Enmund* is that a defendant only vicariously liable for murder because of his participation in a felony cannot be sentenced to death. Therefore, an *Enmund* violation constitutes fundamental error, and federal habeas review of this claim would be proper if the Florida Supreme Court had held it to be procedurally barred. *Spencer v. Kemp*, 781 F.2d 1458, 1470 (11th Cir.1986) (state procedural rule that is sporadically applied is not independent and adequate state ground).

tion during the sentencing phase of the trial. Mann requested the court to instruct the jury that they could consider his failure to flee after the police searched his truck as a mitigating factor in rendering their sentence recommendation. The trial court refused to give such an instruction. Instead, the court instructed the jury on the statutorily enumerated mitigating factors and added only, "The mitigating circumstances I have just read you indicate the principal factors for you to consider. You may consider any other circumstances presented to you which you feel appropriate."

The district court found this claim to be procedurally barred because of Mann's failure to object properly at trial. Instead of specifically objecting to the court's failure to instruct the jury on non-flight, Mann interposed only a general objection to the court's failure to give any of his requested special instructions. Although a specific objection is necessary in order to raise a claim on direct appeal, *see, e.g., Steinhorst v. State,* 412 So.2d 332, 338 (Fla.1982); *Hamilton v. State,* 458 So.2d 863, 865 (Fla. Dist.Ct.App.1984), this claim is not procedurally barred.

■ Mann raised this precise claim on direct appeal despite his failure to interpose a specific objection at trial. The Florida Supreme Court vacated Mann's death sentence, holding that the trial court had improperly found two aggravating circumstances and that its findings regarding a third aggravating circumstance were too ambiguous to allow appellate review. After discussing the merits of those claims, the court stated only, "We find Mann's other sentencing challenges to be without merit." *Mann,* 420 So.2d at 581. Because the Florida Supreme Court undeniably waived Mann's failure to object properly at trial and decided the merits of this claim, federal habeas review is warranted. *Lefkowitz,* 420 U.S. at 292 n. 9, 95 S.Ct. at 891 n. 9; *Henry,* 686 F.2d at 313–14.

■ Mann, relying on *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), argues

that a defendant charged with a capital offense is entitled to any instruction he requests pointing out specific non-statutorily enumerated mitigating factors to the sentencing jury. However, even assuming *arguendo* that a defendant in a capital case has such a right, Mann was not entitled to the instruction he requested concerning non-flight because he failed to present any evidence that he was aware prior to his arrest that his truck had been searched. If he was unaware that the police had searched his truck, his failure to flee after they did so does not establish a mitigating circumstance. *See United States v. Williams,* 728 F.2d 1402, 1404 (11th Cir. 1984) (defendant entitled to jury instruction on defense theory only if theory has foundation in evidence). *Cf. United States v. Beahm,* 664 F.2d 414, 419–20 (4th Cir.1981) (error to instruct jury that flight shows consciousness of guilt where defendant unaware at time of flight that he was under investigation).

## E. IMPROPER CLOSING ARGUMENT

Mann complains that one of the prosecutors in closing argument before the sentencing jury referred to matters outside of the record, including prior crimes and other bad acts, and made allegations not reasonably supported by the record. The district court dismissed this claim as barred because Mann failed to object at trial to the comments. However, because Mann raised this claim in his Rule 3.850 motion and, as previously discussed, because the Florida Supreme Court seemingly dismissed on the merits the claims Mann raised in that motion, federal habeas review is warranted.

■ Two of Mann's objections are without merit. First, Mann contends that the prosecutor referred to an incident not in the record when the prosecutor stated:

We know there was an incident back in 1969 involving a seven-year-old girl. Where is she today, I know not, but she is a twenty-year-old person living somewhere in the country. And I imagine if we had the records and the resources, we could go back and find her. We could

give you the name of that victim. Let's just call her Jane Doe.

However, the record clearly rebuts Mann's contention. At the sentence proceeding, Mann called Dr. Fireman, a psychiatrist, to testify that Mann was uncontrollably compelled by paranoid rage and repressed pedophilia to commit the murder. Upon cross examination, Dr. Fireman explained that he based his conclusion in part on Mann's psychiatric history. That history, according to Dr. Fireman, included a pedophiliac incident in 1969 with a seven-year-old girl. Thus the record fully supported the prosecutor's statement.

■ Second, Mann objects to the prosecutor's statement that "And, I think given the testimony you have heard in this case and the way this man is with children, that his intentions were to sexually molest her [the victim in this case]." Mann's complaint is based on the fact that he was not charged with a sex offense, that there was no evidence of sexual assault, and that there was evidence that he killed the victim in a fit of suicidal rage. None of these bases is sound. In the sentence phase of a capital case, the prosecutor can refer to any circumstance surrounding the charged crime even if that circumstance is not an element of the crime, as long as his reference is reasonably supported by the record. *See, e.g., Tucker v. Kemp*, 762 F.2d 1480, 1486–87 (11th Cir.1985) (en banc), *vacated*, —— U.S. ——, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985), *aff'd*, 802 F.2d 1293 (1986) (en banc) (prosecutor's comment during sentence phase of capital case that defendant sexually assaulted victim proper where defendant's confession contained admission of sexual assault even though defendant acquitted of related sodomy charge). The record here showed that Mann suffered from virtually irresistible pedophilia and that he had previously engaged in at least one pedophiliac act. In addition, Debra Johnson testified that Mann had sexually assaulted her in 1973. Furthermore, the prosecutor did not say that Mann had sexually assaulted the victim. To the contrary, he stated that the victim successfully resisted and that Mann abandoned his effort to assault her sexually. In light of the

evidence in the record and the limited nature of the statement, the prosecutor's comment is not improper.

■ However, two of the remarks to which Mann objects do constitute improper comments. First, Mann objects to the prosecutor's statement that "Dr. Fireman indicated in his testimony that he talked about other criminal episodes with the defendant that we don't know about." That statement is a blatant mischaracterization of Dr. Fireman's testimony. Dr. Fireman's only testimony touching on that subject occurred during cross-examination:

Q: Are the manifestations of his pedophiliac tendencies confined to 1969, 1973 and this case, as far as you know?

A: Okay. In answer to your question, of course, it occurred to me ... [to] try to find out if there are other victims or other experiences of similar behavior, and I have, in fact, wanted very much to explore that. But the time constraints have not permitted me to do that.

That testimony does not fairly support the prosecutor's comment at all.

■ Second, in arguing that the crime was heinous, atrocious and cruel, the prosecutor stated, "We did not show you everything that was available. We can only show you those items that were permitted into evidence, those items which were found to be more relevant than inflammatory." This Court has pointedly held that a prosecutor cannot urge a jury to find aggravating circumstances on any basis other than evidence in record and the proper inferences therefrom. *Brooks v. Kemp*, 762 F.2d 1383, 1408 (11th Cir.1985) (en banc), *cert. denied*, —— U.S. ——, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). The prosecutor's comment here clearly falls within that proscription.

■ Although those two statements are improper, Mann is not entitled to relief unless they rendered his sentence proceeding fundamentally unfair. *Darden v. Wainwright*, —— U.S. ——, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986); *Donnelly v.*

*DeChristoforo,* 416 U.S. 637, 642–45, 94 S.Ct. 1868, 1871–72, 40 L.Ed.2d 431 (1974). In order for the sentence proceeding to be deemed fundamentally unfair, there must be a reasonable probability that, in the absence of the offending remarks, the sentencing outcome would have been different. *Tucker v. Kemp,* 802 F.2d 1293, 1295–96 (11th Cir.1986) (en banc); *Wilson v. Kemp,* 777 F.2d 621, 623 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986); *Brooks,* 762 F.2d at 1400–02, 1413. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

 Viewing the sentence proceeding in its entirety, we cannot say that a reasonable probability exists that the sentencing outcome would have been different absent the prosecutor's two objectionable statements. Importantly, the trial court properly instructed the jury that their sentence must be based only on evidence presented before them. *See Brooks,* 762 F.2d at 1400, 1414–15 (prosecutor's improper comment did not result in fundamentally unfair sentencing where court properly instructed jury). Furthermore, there is little reason to believe that facts outside the record influenced the sentence. The trial court's finding that Mann had been previously convicted of a felony was based solely on Mann's conviction for burglary in Mississippi, a finding that the record fully supported. There is no suggestion that the court relied on undocumented convictions to find that aggravating circumstance. Likewise, the record supported the finding that the murder was heinous, atrocious and cruel. The victim here, a ten-year-old girl, was stabbed and cut several times before being killed by a skull fracture. The jury saw a photograph of the victim's body. There was no need for the jury to speculate on the existence of evidence outside of the record to find this murder heinous, atrocious, and cruel. Consequently, the prosecutor's two improper comments do not entitle Mann to relief.

## F. *CALDWELL* CLAIM

Mann argues that the prosecutor and the court diminished the jury's sense of responsibility in imposing the death penalty in violation of the Eighth Amendment. *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Even though Mann raised this claim in his Rule 3.850 motion, the district court found this claim to be procedurally barred because Mann failed to raise it on direct appeal. However, as discussed, the Florida Supreme Court ignored any procedural default in deciding the Rule 3.850 motion and dismissed all claims presented in the motion on the merits. Therefore, federal habeas review is warranted.[5]

In *Caldwell,* 472 U.S. at 329, 105 S.Ct. at 2639, the Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." Thus, the first step in our analysis is determining what role the jury has in Florida in determining the appropriateness of the death sentence. The next step is to determine whether the comments by the prosecutor and the court diminished the jury's sense of responsibility in light of their role in the sentencing process.

---

**5.** Furthermore, federal habeas review would have been warranted even if the Florida Supreme Court had dismissed this claim as procedurally barred. *Caldwell* was decided after Mann's second direct appeal. Claims based on a significant change in constitutional law since the time of the direct appeal can be raised for the first time in a Rule 3.850 motion. *Witt v. State,* 387 So.2d 922, 929 (Fla.), *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). A holding that this claim was barred would have been an application of a procedural bar to a type of claim that Florida does not regularly and consistently bar. Therefore, federal habeas review would not have been barred. *See Adams v. Wainwright,* 804 F.2d 1526, 1531 n. 6 (11th Cir.1986) (no procedural default even if state supreme court dismissed *Caldwell* claim raised for first time in Rule 3.850 motion as barred because direct appeal concluded before *Caldwell* issued).

Florida currently has a trifurcated procedure for trying capital cases. After a jury determination of guilt, a separate sentencing hearing is held before the same jury who then renders a recommended sentence based on their assessment of the aggravating and mitigating factors. Fla.Stat.Ann. § 921.141(1), (2). The trial judge then weighs the aggravating and mitigating factors and imposes a final sentence. In making that determination, the trial court must give great weight to the jury's recommendation, *McCampbell v. State*, 421 So.2d 1072, 1075 (Fla.1982) (per curiam), and may reject the jury's recommendation only if the facts are "so clear and convincing that virtually no reasonable person could differ." *Tedder v. State*, 322 So.2d 908, 910 (Fla.1975) (per curiam). Consequently, the jury plays a "critical" role in determining the appropriateness of death. *Adams v. Wainwright*, 804 F.2d 1526, 1529 (11th Cir. 1986).

[20] Here the prosecutor's and the court's comments misled the jury as to their critical role. The prosecutor told the venire panel at least five times that their sentence recommendation was "advisory" and that imposing the death penalty was "not on your shoulders." In closing argument at the sentence proceeding, the prosecutor stated, "What I'm suggesting to you is that the ultimate responsibility for the imposition of the sentence rests with Judge Philip Federico.... He's heard everything you have. He may have the opportunity to learn more before he imposes a sentence." Furthermore, the trial court's preliminary instructions to the jury at the sentencing phase stated:

> The final decision as to what punishment shall be imposed rests solely with the judge of this court. However, the law requires that you, the jury render to the court an advisory sentence as to what sentence should be imposed on the defendant.

Then at the close of the sentencing phase, the court instructed the jury:

> [I]t is now your duty to advise the court as to what punishment should be imposed on the defendant.... As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the judge. However, it is your duty to follow the law which will now be given to you by the court and render to the court an advisory opinion....

In *Adams*, 804 F.2d at 1532, this Court found similar comments violated the principles laid down in *Caldwell*.[6] As in *Adams*, the court, having told the jury that their recommendation was advisory, failed to inform the jury that their recommendation would be given great weight. Consequently, the jury was left "with a false impression as to the significance of their role in the sentencing process." *Id.* at 1531 n. 7. This false impression, as acknowledged in *Adams*, "created a danger of bias in favor of the death penalty." *Id.* at 1532.

In addition, other indicia relevant to finding a *Caldwell* violation are present here. The jury was told that the alternative decision maker was the trial judge—a person jurors might view as more entitled than they to make such a decision. *Caldwell*, 472 U.S. at 331–35, 105 S.Ct. at 2641–42; *Adams*, 804 F.2d at 1532. The court made some of the misleading comments, increasing the likelihood that the jury would believe that their recommendation would be merely advisory. *Caldwell*, 472 U.S. at 339, 105 S.Ct. at 2645; *Adams*, 804 F.2d at 1532. Nor did the court ever withdraw or correct its misleading statements or accu-

---

**6.** The trial court in *Adams* stated:

> The Court is not bound by your recommendation. The ultimate responsibility for what this man gets is not on your shoulders. It's on my shoulders. You are merely an advisory group to me in Phase Two. You can come back and say, Judge, we think you ought to give the man life. I can say, I disregard the recommendation of the Jury and I give him death. You can come back and say, Judge, we think he ought to be put to death. I can say, I disregard your recommendation and give him life. So that this conscience part of it as to whether or not you're going to put the man to death or not, that is not your decision to make. That's only my decision to make and it has to be on my conscience. It cannot be on yours.

*Adams*, 804 F.2d at 1528.

rately describe the jury's role. *Caldwell,* 472 U.S. at 340, n. 7, 105 S.Ct. at 2645 n. 7; *Adams,* 804 F.2d at 1531 n. 7. Consequently, a substantial risk exists that the prosecutor's and the court's comments, by seriously misrepresenting the effect of the jury's sentence recommendation, induced the jury to forego determining whether death was the appropriate sentence, thus making both their recommendation and Mann's sentence unreliable.

■ That most of the prosecutor's comments were made during voir dire does not detract from our conclusion. Although comments made in the guilt phase of a trial have a lesser chance of improperly affecting the jury's sentencing decision, *Darden,* — U.S. at —— n. 15, 106 S.Ct. at 2473 n. 15, comments made prior to the sentencing phase can establish a *Caldwell* violation. *Adams,* 804 F.2d at 1531 n. 7. This is especially true where, as here, the court exacerbated the error in the instructions at the sentencing phase. *Id.; Caldwell,* 472 U.S. at 325, 105 S.Ct. at 2638.

Furthermore, it cannot be said that the mischaracterization had no effect on Mann's sentence.[7] As in *Adams,* 804 F.2d at 1532–33, both aggravating and mitigating circumstances were present, making it unlikely that the court would reject the jury's sentence recommendation as one no reasonable person could support. Because Mann's sentence was originally vacated on direct appeal, the trial court did have to resentence Mann. The resentencing was done without calling a new jury, and some additional evidence relating to one aggravating circumstance was presented to the court. Nonetheless, there is no indication that the court attached less than great weight to the jury's recommendation as it was required to do. Consequently, Mann is

entitled to relief in the form of a resentencing proceeding.

## G. USE OF THE MISSISSIPPI CONVICTION AS AN AGGRAVATING CIRCUMSTANCE

Mann argues finally that the trial court erred by relying on his conviction for burglary in Mississippi to find an aggravating circumstance. He contends principally that the Mississippi conviction was premised on an unconstitutionally vague statute, that he received ineffective assistance of counsel in defending against the conviction, that the conviction violated the double jeopardy clause, and that the conviction rested on unconstitutionally unreliable identification evidence. He concludes, therefore, that the trial court erred in using that conviction to find an aggravating circumstance. *See Zant v. Stephens,* 462 U.S. 862, 887 n. 23, 103 S.Ct. 2733, 2748 n. 23, 77 L.Ed.2d 235 (1983); *United States v. Tucker,* 404 U.S. 443, 446–49, 92 S.Ct. 589, 591–93, 30 L.Ed.2d 592 (1972).

The district court dismissed this claim as barred, finding that Mann's failure to raise it on direct appeal precluded federal habeas review even though Mann raised it in his Rule 3.850 motion. *See Smith v. Murray,* — U.S. ——, 106 S.Ct. 2661, 2664–66, 91 L.Ed.2d 434 (1986) (failure to raise on direct appeal claim challenging admissibility of evidence used to find aggravating circumstances justifying imposition of death penalty precludes federal habeas review even though raised in state habeas corpus proceeding). Furthermore, although the Florida Supreme Court seemingly dismissed on the merits most of the claims Mann raised in his Rule 3.850 motion, that court did not waive the procedural bar and

---

**7.** The prejudice standard of *Tucker,* 802 F.2d at 1295–96, is inapplicable here. *Tucker* applied the prejudice prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to prosecutorial comments that mischaracterized the jury's role in sentencing, placing the burden on the defendant to prove harm whereas *Caldwell* required the state to show that the comments had no effect on the jury. *Tucker* distinguished *Caldwell* on the basis that the court in *Caldwell* adopted the prosecutor's mis-

statements whereas in *Tucker* the court correctly instructed the jury and did not endorse the prosecutor's misstatements. In fact the court acknowledged that, if the trial court mischaracterized the jury's role in determining the sentencing, the Eighth Amendment's heightened requirement of reliability is applicable. *Tucker,* 802 F.2d at 1295. Thus *Tucker* is inapplicable if, as was the case here, the court misled the jury.

address the merits of this claim.[8] Therefore, this claim ordinarily would be procedurally barred.

■■■ Mann argues, however, that the Florida Supreme Court's failure to address the merits of this claim in his Rule 3.850 motion constitutes an arbitrary and unannounced procedural bar and therefore cannot preclude federal habeas review. *See Spencer v. Kemp,* 781 F.2d 1458, 1470 (11th Cir.1986) (en banc) (novel or sporadically applied procedural bar not adequate and independent state ground precluding federal habeas review). We agree.

Prior to Mann's second direct appeal, Florida courts consistently held that a defendant could raise for the first time in a Rule 3.850 motion a claim that the trial court enhanced his sentence in reliance on a prior conviction obtained in violation of his right to counsel. *Washington v. State,* 442 So.2d 382, 382 (Fla.Dist.Ct.App.1983); *Lofton v. State,* 442 So.2d 1091, 1092 (Fla. Dist.Ct.App.1983); *Johnson v. State,* 362 So.2d 465, 465 (Fla.Dist.Ct.App.1978); *Garcia v. State,* 358 So.2d 561, 561 (Fla.Dist. Ct.App.1978); *Lloyd v. State,* 346 So.2d 1075, 1076 (Fla.Dist.Ct.App.1977); *Glenn v. State,* 338 So.2d 263, 263 (Fla.Dist.Ct.App. 1976); *Hicks v. State,* 336 So.2d 1244, 1245–46 (Fla.Dist.Ct.App.1976); *Wolfe v. State,* 323 So.2d 680 (Fla.Dist.Ct.App.1975); *Howard v. State,* 280 So.2d 705 (Fla.Dist. Ct.App.1973). Although all of these cases concern prior convictions obtained in violation of the right to counsel, their premise is that *Tucker* prohibits a court from imposing a sentence that is based in part on prior unconstitutional convictions; therefore, their logic seemingly embraces any constitutional challenge to a prior conviction relied on to enhance a sentence. At the least they offer no explanation why such challenges should be confined to violations of the right to counsel. Admittedly the Florida Supreme Court had not pronounced on the matter. However, in the light of the consistent holdings of the state courts of appeals, the Florida Supreme Court's holding that Mann's challenge to his prior conviction was not cognizable in a Rule 3.850 motion was, if not a novel application of a procedural bar, at the least a procedural bar of which Mann "could not fairly be deemed to have been apprised." *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958). Therefore, federal habeas review of this claim is not barred.

However, we decline to pass on the merits of this claim. Neither the district court nor any state court ever conducted an evidentiary hearing on this claim. Because an evidentiary hearing is necessary to assess the merits of this claim, ordinarily we would remand this case to the district court to conduct such a hearing. However, our holding above that Mann is entitled to a new sentence proceeding because of a *Caldwell* violation obviates the need for an evidentiary hearing on this claim. Because the prosecutor's and the court's comments misrepresented to the jury their role in the sentencing process, Mann is entitled to a new sentence proceeding before a new jury. Therefore, we need not decide now whether Mann's prior conviction for burglary was properly admissible in the original sentence proceeding, and we decline to comment on whether it would be admissible in any subsequent sentence proceeding if the state were to offer it into evidence. *See Davis v. Zant,* 721 F.2d 1478, 1488–89 (11th Cir.1983) (whether trial court improperly instructed sentencing jury as to aggravating circumstance moot where petitioner entitled to resentencing on ground that jury was unconstitutionally composed), *aff'd sub nom. Davis v. Kemp,* 752 F.2d 1515 (en banc), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 707 (1985).

Accordingly, the opinion of the district court is REVERSED, and this case is REMANDED to the district court with instructions to grant the writ of habeas corpus unless the state provides Mann with a

---

**8.** In dismissing Mann's Rule 3.850 motion, the Florida Supreme Court stated, "We do reject his contention that it is appropriate in a collateral attack on his sentence of death to attempt to collaterally attack Mann's prior conviction of a crime of violence in Mississippi...." *Mann,* 482 So.2d at 1361.

new jury sentence proceeding not inconsistent with this opinion.

FAY, Circuit Judge, concurring in part and dissenting in part:

This case presents a variety of issues on which Judge Johnson has written. Finding myself in agreement with portions of his opinion and in disagreement with others, I will set forth my position using the section delineations of the majority opinion.

As to those issues raised and discussed in sections IIA, B, C, D, and E, I join in the result but not in the holding by the majority. Although it is sometimes difficult to discern, it seems to me we should presume that state courts follow and apply their procedural rules. As this case proceeded through the Florida courts, specific issues were raised and others were not. Throughout the various appeals the state raised procedural bars in refuting these claims. I am simply not satisfied that the language quoted by the majority is sufficient to attribute to the Florida Supreme Court a review on the merits of the specific claims raised here. To conclude that the words, "We find the conviction supported by competent, substantial evidence, free from substantive error, and affirm it," reflects a ruling on the merits of each and every claim paints with a broad brush. Most respectfully, I am unable to join in such a holding.

As to the *Caldwell* claim, covered in section IIF of the majority opinion, a review of the record leaves me with a different impression. While agreeing with the majority that this claim is not procedurally barred because *Caldwell* was decided after Mann's second direct appeal, the transcript of the trial convinces me that the jury was not misled as to its responsibility. It serves no purpose to dwell on the word "advisory" as does the majority, because that is the procedural structure established by the Florida statutes. The jury's verdict as to the appropriate sentence is advisory. The question is whether the jury was somehow given an erroneous understanding of its responsibility. Such did not occur.

Specifically, defense counsel outlined during voir dire questioning the procedure as:

MS. SCHAEFFER: By law, the judge only has two choices if you return a verdict of murder in the first degree. Like Mr. Meissner said, you go back and render an advisory opinion as to what you people believe is the appropriate sentence, whether you believe that the appropriate sentence is death or whether you believe the appropriate sentence is life with a minimum mandatory twenty-five years.

Now, he just doesn't disregard that and do whatever he wants to. He is, by law, required to give your recommendation great weight, but he is also permitted to overrule your recommendation if he desires to do so and he feels under the law he should. But he can still only do one of those two things. The law does not give him any other discretion.

He has to, ultimately, if Mr. Mann is convicted of murder in the first degree, say, I sentence you to death, life, or the minimum mandatory of twenty-five years. That's the only two options he has. Okay? Does that clear that up? Does everybody understand that?

This was followed later with a similar explanation from the prosecutor:

As you know, this is a murder case. You now know that the Defendant is charged with first degree murder. You know that if the jury returns a verdict of guilty of murder in the first degree, that you will be asked to deliberate further after additional evidence and testimony has been given, under some guidelines, in order that you can offer Judge Federico an advisory opinion as to what sentence you think he ought to consider imposing, whether you think there should be a recommendation of mercy or whether you think that the man should be sentenced to the electric chair.

My question is, assuming that there is a finding of guilty of murder in the first degree, and assuming that there are sufficient aggravating circumstances presented as to warrant that you recommend the imposition of the death penalty, is there anyone here who is so opposed to

that that you could not think you could follow the law and return such a recommendation, regardless of what the aggravating circumstances were?

Do any of you have that kind of problem with the imposition of the death penalty?

When the trial proceeded to the sentencing phase, both counsel emphasized the seriousness of the case and the awesome responsibility of the jury. In the words of defense counsel:

You have reached the end of the trial, and you will now reach a decision to determine whether or not you recommend to this Court whether Larry Mann lives or dies. We began this case with Susan telling each of you on voir dire that we are here and our function here is to save this man's life. We're up front about that from the beginning. We didn't delude you from the beginning.

The instructions given by the court were consistent with the seriousness of the occasion. The trial court explained to the jury:

The sentence which you recommend to the Court must be based upon the facts as you find them from the evidence and the law as it is given to you by the Court. Your verdict must be based upon your finding of whether sufficient aggravating circumstances exist and whether sufficient mitigating circumstances exist which outweigh any aggravating circumstances found to exist. Based on these considerations, you should advise the Court whether the Defendant should be sentenced to life imprisonment or to death. In these proceedings, it is not necessary that the verdict of the jury be unanimous, but a verdict may be rendered upon the finding of a majority of the jury. The fact that the determination of whether or not a majority of you recommend a sentence of death or sentence of life imprisonment in this case can be reached by a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you ballot, you should carefully weigh, sift and consider the evidence, and all of it, realizing that a

human life is at stake, and bring to bear your best judgment upon the sole issue which is submitted to you at this time, of whether a majority of your number recommend that the Defendant be sentenced to death or to life imprisonment.

In my opinion what transpired here is simply unlike *Adams*. There could not have been in the jury's mind "a false impression as to the significance of their role."

Finally comes the claim dealing with the attack upon the use of the Mississippi conviction as an aggravating circumstance. As pointed out by the majority, the allegations suggest that the Mississippi statute was unconstitutionally vague, that defense counsel was ineffective, that there was a double jeopardy violation and that identification evidence was unreliable. The majority reasons that because Florida allows collateral attacks upon the use of convictions obtained in violation of the right to counsel it would allow any attack based upon constitutional grounds and therefore its rejection of these claims on procedural grounds was novel and unexpected. This strikes me as a strange form of reasoning. As the majority notes, on the only occasion when the Florida Supreme Court addressed whether or not attacks such as these would be allowed it answered in the negative. To suggest that logic dictates otherwise is rather unique reasoning. It seems rather apparent that convictions obtained without counsel fall into an easily defined class and necessarily involve a fundamental constitutional deprivation. Attacks regarding the effectiveness of counsel are far from clear and much more complicated. To think that a Florida court would rule on the vagueness of a Mississippi statute in a collateral attack upon a Florida conviction stretches my imagination. And the same can be said for the other alleged defects. Suffice it for me the Florida Supreme Court has held the claim procedurally barred. The law compels us to do likewise.

In sum, I would affirm the judgment of the district court denying relief and most respectfully dissent.

CLARK, Circuit Judge, specially concurring:

I join Judge Johnson's opinion except for a portion of section IIA (regarding the procedural default of Mann's involuntary absence claim) and section IIG (regarding the use of Mann's Mississippi conviction as an aggravating circumstance). As to these two sections, I agree with the result, but for different reasons. I write separately also to express explicitly my reasons for joining in section IIF (regarding Mann's *Caldwell* claim).

## I. *Procedural Default*

In his Rule 3.850 motion, Mann raised several claims he had not raised on direct appeal. Among these was a claim that his absence from a jury view of the crime scene violated his constitutional rights. Mann's attorneys raised objections during the jury view, claiming that the police officer who led the tour of the crime scene provided substantive testimony to the jury. The giving of such testimony allegedly exceeded the proposed scope of the view and thus defendant's presence was required. Mann's failure to pursue this claim on appeal constituted a procedural default under Florida law.

In excusing the default, the opinion refers to the following language from the Florida Supreme Court's opinion affirming Mann's conviction on direct appeal:

> In addition to this claimed trial error we have independently reviewed the record to assure ourselves of the propriety of the conviction. We find the conviction supported by competent, substantial evidence, free from substantive error, and affirm it.

*Mann v. State*, 420 So.2d 578, 580 (Fla. 1982). There is merit to the position that the Florida Supreme Court's independent review of the record in capital cases constitutes a waiver of the defendant's procedural default, especially where the claim was raised at trial. Where the objection appears in the trial record, it is much more likely that the Florida Supreme Court came across this issue during its review of the record and denied the claim on its merits.

However, adoption of this waiver rule is unnecessary in light of the Florida Supreme Court's later consideration of the issues in its opinion denying post-conviction relief.

In its opinion on appeal from the denial of Mann's 3.850 motion, the Florida Supreme Court stated: "[w]e see no need or benefit in discussing in detail the remainder of Mann's claims in his 3.850 motion." *Mann v. State*, 482 So.2d 1360, 1361 (Fla. 1986). Thus, the court reviewed but did not address Mann's argument that his involuntary absence claim was cognizable in a motion for post-conviction relief. The opinion relies on the above language from the Supreme Court's 3.850 motion in excusing Mann's procedural default with regard to his *Miranda* and *Enmund* claims. I see no reason to rely on a different ground to excuse his default regarding the jury view issue, which stands in the same procedural position as the claims addressed in sections IIB and IIC.

Where the state court does not plainly invoke its procedural default rules, the petitioner should not be barred from seeking federal habeas review. *See Oliver v. Wainwright*, 795 F.2d 1524, 1528–29 (11th Cir.1986) *cert. denied,* — U.S. —, 107 S.Ct. 1380, 94 L.Ed.2d 694 (1987). A contrary rule would be inconsistent with the reasoning of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

*Long* laid down a bright-line rule to determine whether state court opinions relied on independent and adequate state law grounds so as to preclude direct review of state criminal convictions in the Supreme Court. We have in the past recognized that the Court's decisions in the direct review context are, at the very least, relevant to our consideration of procedural default issues in the habeas context. *See Spencer v. Kemp*, 781 F.2d 1458, 1470 & n. 21 (11th Cir.1986) (en banc) ("The principles derived from [direct review] cases ... are as applicable on federal collateral review of a state court conviction as they are on direct appeal."); *Francois v. Wainwright*, 741 F.2d 1275, 1281 (11th Cir.1984) (only "indepen-

dent and adequate" state procedural grounds preclude federal habeas review).

In *Long*, the state court referred twice in its opinion to the state constitution, but otherwise relied exclusively on federal law. Justice O'Connor reviewed and rejected the existing ad hoc methods of dealing with ambiguous state court opinions. These rejected options included: dismissing the case; continuing the case to obtain clarification from the state court; and examining the state law ground to determine whether it has been guided by federal law. In place of these options, the Court announced a "plain statement" rule, which permits direct review unless the state court makes clear in its opinion that the case rests on an independent and adequate state law ground. Although *Long* involved the independence and adequacy of a state *substantive* ground, the rule announced in that case is applicable where the state court opinion is ambiguous as to its reliance on an independent and adequate state *procedural* ground. *See Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985).

The *Long* "plain statement" rule is applicable in this case. Where the state court opinion is silent on the default issue, we should presume that the court decided the issue on federal grounds where a federal constitutional question is at issue. First of all, such a bright-line rule fosters the comity and federalism concerns of *Sykes* by providing a consistent and predictable approach. Such a rule would not be unduly burdensome to the state courts, and those courts would retain their ability to enforce their procedural rules and to preclude federal review in appropriate cases. *Cf.* (Justice) O'Connor, *Our Judicial Federalism*, 35 Case W.Res.L.Rev. 1, 8 (1984) ("The *Michigan v. Long* rule also promotes state court autonomy, by virtue of the simple fact that state courts retain complete control over whether the rule will be applied and whether the case can be reviewed.") The *Long* rule simply requires the state courts to be quite clear about their intentions when they desire to preclude review of the merits of the claim because of procedural default. It is not too much to require the state court to be explicit when applying its procedural default rules.

Second, the interest of a defendant, particularly a capital defendant, in having his federal claim heard by a federal habeas court is simply too great to be precluded by our presumption that the state court's silent affirmance was based on procedural default. In *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court indicated that the "independent and adequate" test applied in direct review cases would unduly restrict federal jurisdiction in habeas cases. *Id.* at 428–34, 83 S.Ct. at 843–46. The indication was that issues barred from direct review could, in some cases, be heard on habeas. This portion of *Fay* was implicitly rejected in *Sykes*, and it now seems clear that the independence and adequacy of the state procedural rule is the first inquiry in procedural default cases. *See Spencer*, 781 F.2d at 1463. However, declining to apply the *Long* plain-statement rule in habeas cases would turn *Fay* on its head by creating a situation where some cases would be amenable to direct Supreme Court review but would not be amenable to review by a federal habeas court. Such a result is not required, nor even permitted, by the cases since *Fay*. Given the Supreme Court's crowded docket and nationwide jurisdiction, it would be illogical and unfair to have a rule whereby federal review is permitted but the only path to that review is the rarely granted writ of certiorari. *See Coleman v. Balkcom*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981) (Stevens, J. concurring in denial of certiorari).

Finally, the willingness of the Florida Supreme Court to search the record in capital cases should caution us against assuming that silent affirmances by that court indicate enforcement of procedural default rules. The Florida court sometimes considers issues on their merits, even when they are not raised by the defendant. *See Davis v. State*, 461 So.2d 67 (Fla.1984), *cert. denied*, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985); *Rose v. State*, 425 So.2d 521 (Fla.1982) *cert. denied*, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983).

It would be an affront to the principles of comity and federalism to presume that the Florida Supreme Court was relying on procedural default absent express language in that court's opinion to that effect.

## II. *Use of the Mississippi conviction as an aggravating circumstance.*

I do not join in deciding this issue because it is unnecessary to address the procedural and substantive aspects of this claim, given our holding that Mann is entitled to a new sentencing proceeding. In the meantime, Mann may continue his efforts to attack his Mississippi conviction in the Mississippi courts and, if necessary, in the appropriate federal courts.

## III. *Caldwell*

I concur fully in section IIF of Judge Johnson's opinion. I write separately to make clear which of the prosecutor's and trial court's comments were impermissible and to discuss the circumstances of this case which make it quite likely that these comments affected the advisory jury's decision to recommend the death penalty.

In explaining the jury's role in the sentencing process during jury selection, the prosecutor told the venire:

> The recommendation that you make to Judge Federico in this portion of the trial is *simply a recommendation,* and *he is not bound by it.* He may impose whatever sentence the law permits. He will have been here and will have listened to all of the testimony himself.

Trial Transcript Vol. I at 108 (emphasis added). A short time later, the prosecutor, in the context of questioning the veniremembers about their beliefs regarding the death penalty, again told the panel:

1. The following discussion took place upon defense counsel's request for this specific instruction:

 MR. DOHERTY: Number three just says that the jury recommendation is entitled to great weight.

 THE COURT: Well, I think that goes without saying. I don't know if I need to instruct them that that is so.

> [Y]ou understand *you do not impose the death penalty. That is not on your shoulders. The ultimate decision rests with Judge Federico.*

*Id.* at 110 (emphasis added). In response to a question, the prosecutor repeated the inaccurate statement of law to the venire:

> [Veniremember Gordon]: What's the alternative? Is it life in prison?
>
> Mr. Meissner: Yes, it is. Again, *that decision rests up here with the law, with Judge Federico.* You will have the opportunity after you have heard everything there is to hear to make a recommendation to him. *But it is not legally on your shoulders,* though. *It is not your ultimate decision.* You act in that regard in an *advisory capacity only.* Does that cause you any difficulty?
>
> Mr. Gordon: No.

*Id.* at 110–11 (emphasis added).

The trial court's preliminary instructions to the jury prior to the beginning of the penalty phase similarly misled the jury as to the importance of its advisory role. The court charged the jury:

> The punishment for this crime is either death or life imprisonment. The final decision as to what punishment shall be imposed rests *solely with the judge* of this court. However, the law requires that you, the jury render to the court an *advisory sentence* as to what sentence should be imposed on the defendant.

Trial Transcript Vol. X at 1252 (emphasis added).

This instruction to the jury followed the court's denial of a defense motion for a specific instruction that the jury's recommendation of life or death is given great weight. *Id.* at 1248.[1]

MR. DOHERTY: I think it is. The reason we would ask—

THE COURT: That's something that I need to do after they make their recommendation, and I will give it great weight.

MR. DOHERTY: I know, but they need to know that so they know we're not up there just—

Again, at the close of the penalty phase in giving instructions to the jury prior to the time they retired to recommend the sentence, the court again told the jury:

> Ladies and Gentlemen of the jury, it is now your duty to *advise* the court as to what punishment should be imposed on the defendant for his crime of murder in the first degree. As you have been told, *the final decision as to what punishment shall be imposed is the responsibility of the judge.* However, it is your duty to follow the law which will now be given to you by the court and render to the court an *advisory opinion* based upon your determination. . . .

Trial Transcript Vol. I at 1344–45. After the jury's recommendation, the court finally said it would give the jury's opinion great weight. *Id.* at 1354.

Whether prosecutorial and judicial comments create the "intolerable danger" that the advisory jury chose to minimize the importance of its role depends on the particular facts and circumstances of each case. The trial court may explain to the jury its advisory role, "as long as the significance of the [the jury's] recommendation is adequately stressed." *Harich v. Wainwright,* 813 F.2d 1082, 1101 (11th Cir. 1987) (quoting *Pope v. Wainwright,* 496 So.2d 798 (Fla.1986)). Although the trial court in this case believed the jury understood that its recommendation was entitled to great weight, *see* n. 1, *supra,* the court took no steps to "adequately stress" to the jury that its recommendation was entitled to deference, although a specific request to do so had been made.

The circumstances of this case indicate there was an intolerable danger that the jury recommended the death penalty because it did not understand that its recommendation would, to some extent, bind the trial court to a particular result. The victim in this case was a young child. After she disappeared, members of the community joined in a search of the area where her bicycle was found. Certainly, there is com-

munity pressure upon the jury in such a case to recommend the strictest penalty allowed by law. On the other hand, the jurors heard compelling mitigating evidence that Mann suffered from psychotic depression, and that he committed this crime during a fit of pedophilic rage. They were told that Mann attempted to commit suicide by slashing his forearms shortly after the crime had been committed. He had attempted suicide several times in the past. When the police came to his aid on the day of the murder, Mann said he had done something stupid and needed help. At the sentencing hearing, a psychiatrist testified that Mann committed the crime while under the influence of an extreme mental or emotional disturbance. In fact, the psychiatrist suggested that Mann was on his way home to commit suicide when he encountered the victim. The victim, a 10 year-old girl, intensified his feelings of guilt regarding his pedophilic instincts, thus channeling his self-destructive rage into an act of violence. Faced with a difficult decision, the jurors were quite susceptible to a suggestion that the sentencing decision was "not on [their] shoulders." On these facts, and given the statements of the prosecutor and the court's instructions to the jury, the trial court was required to explain to the jury that its recommendation for life imprisonment would be adopted unless the facts justifying a death sentence were so clear and convincing that virtually no reasonable person could differ as to the appropriateness of the death penalty. *See Tedder v. State,* 322 So.2d 908, 910 (Fla. 1975). Absent such an instruction, the improper comments in this case created the "intolerable danger" that the advisory jury gave its recommendation without truly understanding its proper role. Accordingly, Mann's death sentence (which was based in part on the jury's recommendation) cannot stand.

---

THE COURT: I think the standard instructions bring home to them that it is very important that they, you know, to not act hastily or without due regard to the gravity of these proceedings, that they should carefully weigh and sift and consider the evidence. I think that's sufficient. I will deny number three.