William Boyd TUCKER,
Petitioner-Appellant,

v.

Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.

No. 83–8137.

United States Court of Appeals,
Eleventh Circuit.

Sept. 29, 1986.

As Amended Oct. 30, 1986.

---

Robert B. Remar, Eric G. Kocher, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Wm. B. Hill, Atlanta, Ga., for respondent-appellee.

Before RONEY, Chief Judge, GODBOLD, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK and EDMONDSON,* Circuit Judges, and HENDERSON,** Senior Circuit Judge.

* Circuit Judge Edmondson became a member of the court after this appeal had been orally argued but has participated in this decision after listening to a recording of oral argument. See 11th Cir.R. 24(g).

** Honorable Albert J. Henderson, Senior Circuit Judge, has elected to participate in this decison pursuant to 28 U.S.C. 46(c) (1982).

ON REMAND FROM THE SUPREME
COURT OF THE UNITED STATES

PER CURIAM:

In *Tucker v. Kemp*, 762 F.2d 1480 (11th Cir.1985) (en banc), we concluded that, although the prosecutor had made several improper comments at the sentencing phase of Tucker's trial, his sentencing proceeding was not thereby rendered fundamentally unfair. On December 2, 1985, the Supreme Court granted Tucker's petition for a writ of certiorari and remanded the case to our court for reconsideration in light of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Upon reconsideration, we conclude that our previous decision was consistent with *Caldwell v. Mississippi* and hold that, viewing the record as a whole, Tucker was not denied a fundamentally fair sentencing hearing.

telling it that its decision was not final and was automatically reviewable by the state supreme court, thus diminishing the importance of the jury's role and allowing it to feel less responsible for the awesome decision before it. *Id.* at —— n. 15, 106 S.Ct. at 2473 n. 15. Of critical importance in *Caldwell* was the fact that the trial judge approved of the prosecutor's comments, stating that it was proper that the jury be told that its decision was automatically reviewable. *See id.; Caldwell v. Mississippi*, 472 U.S. at ——, 105 S.Ct. at 2638. Because of the trial judge's agreement with the prosecutor's comments, it was as if the jury received an erroneous instruction from the court at the sentencing phase of a capital proceeding, thus triggering the eighth amendment's heightened requirement of reliability in a capital case and mandating reversal.[2]

## I.

Subsequent to its decision in *Caldwell*, the Supreme Court decided *Darden v. Wainwright*, —— U.S. ——, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), which provides further guidance for our inquiry. The Court in *Darden* reiterated that the standard in a habeas case for assessing improper prosecutorial comment is, as initially enunciated in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), whether the proceeding at issue was rendered fundamentally unfair by the improper argument. *Darden v. Wainwright*, —— U.S. at ——, 106 S.Ct. at 2472.[1] The *Darden* Court explained that *Caldwell* was a unique case. In *Caldwell*, the prosecutor, in the sentencing phase of a capital case, provided the jury with misleading information as to its role in the sentencing process,

## II.

■ We now apply the preceding principles to the case before us. When this case was last before the en banc court, we applied the fundamental fairness standard to petitioner's sentencing proceeding and concluded that the prosecutor's comments did not render the proceeding fundamentally unfair. To make the fundamental fairness determination, we borrowed what has become known as the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 693–94, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), and asked whether there was "a reasonable probability that, in the absence of the offending remarks, the sentencing outcome would have been different." *Tucker v. Kemp*, 762 F.2d at 1483. "A 'reasonable probability' is a probability sufficient to undermine confidence in the out-

---

1. The habeas inquiry is " 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, —— U.S. at ——, 106 S.Ct. at 2472 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)).

2. The Court in *Caldwell* noted that in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), the trial judge took special pains to correct the prosecutor's impropriety,

giving the jury a strong curative instruction. In contrast, in *Caldwell*, the trial judge "not only failed to correct the prosecutor's remarks, but in fact openly agreed with them; he stated to the jury that the remarks were proper and necessary, strongly implying that the prosecutor's portrayal of the jury's role was correct." *Caldwell v. Mississippi*, 472 U.S. at ——, 105 S.Ct. at 2645.

come." *Id.* at 1483–84; *see Strickland v. Washington,* 466 U.S. at 693–94, 104 S.Ct. at 2068. We continue to believe that this standard properly describes the fundamental fairness inquiry—whether the improper remarks were of sufficient magnitude to undermine confidence in the jury's decision. If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair.

■ The en banc court identified four instances of improprieties in the prosecutor's remarks in this case. Two of these, the interjection of the prosecutor's personal opinions and the reference to the financial burden on the taxpayers of imposing a life sentence, are unrelated to the jury's role in the capital sentencing process and thus fit squarely into the *Darden v. Wainwright* analysis. As set out in our prior opinion, neither of these instances was sufficiently egregious to render the proceeding fundamentally unfair.

The prosecutor's other two inappropriate remarks, which have been referred to as the "prosecutorial expertise" argument and the "jury dilution" or "last link" argument, partake of some of the elements found in *Caldwell.*[3] It could be argued that both comments tended to lessen the jury's role in the sentencing process because the comments advised the jury that others, including the prosecutor's office, the police, the grand jury, and the trial judge, participated in the proceedings culminating in a decision whether to impose the death penalty. Unlike *Caldwell,* however, the trial judge in this case correctly instructed the jury and did not put his imprimatur on erroneous information. The court's instruction emphasized to the jury that it had the responsibility of making the sentencing decision. Viewing the entire sentencing proceeding, there can be little doubt that the jury understood it had the sole responsibility to

determine the sentence to be received by petitioner.

■ As discussed in our prior opinion, although the prosecutor told the jury that his office had made a careful decision that this case warranted seeking the death penalty, he did not stop there. He went on to describe why that decision was made, focusing on the individual characteristics of this crime and this defendant, allowing the jury to assess for itself the appropriateness of a death sentence. Defense counsel vociferously argued to the jury that it had the sole discretion to impose death or grant mercy, and the trial judge so instructed the jury. Defense counsel also took issue with the notion of prosecutorial expertise.

■ The "jury dilution" comments could arguably have tended to heighten or lessen the jury's awareness of its sense of responsibility, depending upon how the remarks are viewed. The prosecutor argued that the jury would not be alone in sentencing petitioner to death, but was the "last link" in a process that included police officers, the grand jury, the district attorney, and the trial judge. Although this argument could be said to spread the responsibility for imposing a death sentence, it also had the effect of informing the jury that the process stopped with it, and that if the petitioner was to receive a death sentence, it was the jury that must impose it. Regardless of the interpretation given this comment, the jury was told repeatedly by defense counsel, and instructed by the trial judge, that if it found an aggravating circumstance, it had the sole discretion to impose a life or death sentence. The jury was told that the decision was "completely within your discretion," that it was "absolutely your decision," and that it was its "prerogative" to grant mercy and spare the petitioner's life even if it found an aggravating circumstance. The trial judge correctly instructed the jury that it was "entirely within your discretion to impose either the death penalty or life imprison-

---

**3.** Here, as in *Caldwell,* we are dealing with the sentencing phase of a capital case, rather than the guilt/innocence phase.

ment." The judge repeated this admonition just before the jury retired to deliberate.

When the record of the entire sentencing proceeding is reviewed, we are convinced that the jury was fully apprised of, and appreciated, the decision that it alone had to make—whether to impose a sentence of death or one of life imprisonment. The prosecutor's improper comments, in light of his entire argument, defense counsel's argument, and a proper instruction from the court, did not render the sentencing proceeding fundamentally unfair. Accordingly, we affirm the district court's denial of habeas relief on petitioner's prosecutorial argument claim.

AFFIRMED.

KRAVITCH, Circuit Judge, dissenting, in which JOHNSON and CLARK, Circuit Judges, join:

The majority holds that, *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), notwithstanding, the prosecutorial misconduct at issue here did not deprive Tucker of a fundamentally fair sentencing hearing. Because in my view the misconduct which occurred in Tucker's case violated core principles enunciated in *Caldwell* and was not rendered harmless, I respectfully dissent. I further dissent because the majority continues to adhere to its position that a petitioner who has shown prosecutorial misconduct at his sentencing hearing must further satisfy the heightened prejudice showing required of petitioners alleging ineffective assistance of counsel.

## I. THE SENTENCING PROCEEDING

On March 9, 1978, William Boyd Tucker was convicted by a jury in Muscogee County, Georgia of murder, kidnapping with bodily injury, and robbery by intimidation. During the sentencing proceeding, Tucker called witnesses who testified as to his previously peaceful nature and his lack of any prior trouble with law enforcement. Tucker's witnesses also focused on his troubled relationship and recent reconciliation with his alcoholic father, the stress placed on Tucker by the sudden death of his father three months prior to the crime, and Tucker's serious problem with alcohol and marijuana following his father's death and including the day of the crime. The state presented no evidence at the sentencing proceeding. After the close of evidence, both parties presented closing arguments to the jury. Pursuant to Georgia procedural rules, the state argued first and the defense followed. The court then instructed the jury on the applicable law.

During his closing argument to the jury, the state prosecutor, Gray Conger, repeatedly minimized the importance of the jury's sentencing responsibility. He emphasized that the district attorney's office had already considered all legally relevant factors and concluded that Tucker's case was one of the very few cases that warranted imposition of the death penalty. Conger also argued his personal opinion that Tucker could not be rehabilitated, his personal distaste for Tucker, his belief that Tucker posed a potential threat to other prisoners and guards, the financial burden taxpayers would bear if Tucker were incarcerated for life, his opinion that the evidence of Tucker's guilt was overwhelming, the difference in the comparable worth to society of the victim and Tucker, and the retributive and deterrent justifications for executing Tucker. Conger also suggested that Tucker further evidenced a lack of remorse because he declined to testify until after the jury had returned a guilty verdict.[1]

1. This latter argument distinguishes this case from *Darden v. Wainwright*, — U.S. —, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (improper prosecutorial argument at *guilt* phase did not violate *Caldwell*), in that here the prosecutorial misconduct "implicate[d] ... specific rights of the accused such as the right to counsel [and] the right to remain silent." *Darden,* 106 S.Ct. at 2472. *See United States v. Hopkins,* 464 F.2d 816, 822 (D.C.Cir.1972) (sentence may not be premised on defendant's refusal to express remorse).

Conger also urged the jury to return a death sentence because Tucker, unlike the victim, had

The court's charge to the jury was brief. The judge explained that the jury could only consider the death penalty if it found the existence of an aggravating circumstance. The judge at first stated that it was the jury's duty to determine the penalty that should be imposed and that it was within the jury's discretion to impose either the death penalty or life imprisonment. The court then, however, proceeded to characterize the jury's role as deciding whether to *recommend* the death penalty. In the last three paragraphs of its six paragraph charge, the court indicated six times that the jury's choice of the death penalty would be a recommendation.

## II. THE *CALDWELL* STANDARD AND THE *STRICKLAND* STANDARD ARE NOT INTERCHANGEABLE

The majority, as did our court in our earlier en banc opinion, adopts the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to assess the impact of prosecutorial misconduct. The shortcomings of this approach have been discussed by our court on several occasions. *See Tucker v. Kemp*, 762 F.2d 1496, 1496 (11th Cir.1985) (Clark, J., dissenting), *vacated*, —— U.S. ——, 106 S.Ct. 517, 92 L.Ed.2d 743 (1985); *Brooks v. Kemp*, 762 F.2d 1383, 1426 & n. 1 (11th Cir.1985) (Johnson, J., dissenting), *vacated*, —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986).

*Strickland* and *Caldwell* are fundamentally different in that *Strickland* places the prejudice burden on the habeas petitioner. Once the petitioner shows the defense attorney's performance fell below professional norms, the petitioner must show that absent this deficiency, there is a reasonable probability that the proceeding's outcome would have been different. 104 S.Ct. at 2068. *Caldwell*, however, places the prejudice burden on the state. Once the peti-

tioner has shown that the prosecution attempted to minimize the jury's responsibility at the capital sentencing hearing, the state must show that "this effort had no effect on the sentencing decision." 105 S.Ct. at 2646. Because this case presents virtually the same prosecutorial misconduct as *Caldwell* in the exact procedural posture of *Caldwell*, the *Caldwell* "no effect" standard, and not the *Strickland* prejudice analysis, must apply.

At its core, my objection to the majority's extension of *Strickland* remains that *Strickland* establishes a rigorous prejudice showing that a habeas petitioner must satisfy before he may prevail on an ineffective assistance of counsel claim precisely because: "[T]he government is not responsible for, and hence not able to prevent, [defense] attorney errors that will result in reversal of a conviction or sentence." 104 S.Ct. at 2067. On the other hand the state *can* control prosecutorial conduct and, in the capital sentencing context, is constitutionally obligated to do so. See *Caldwell*, 105 S.Ct. at 2639 (constitutional limits "on imposition of capital punishment are rooted in a concern that the sentencing process should facilitate the responsible and reliable exercise of sentencing discretion." (citations omitted)); cf. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion) ("decision to impose the death sentence [must] be, and appear to be, based on reason rather than caprice or emotion").

It is significant that the Supreme Court did not extend its *Strickland* prejudice analysis to Caldwell's claim of prosecutorial misconduct at sentencing but instead reaffirmed the long line of cases requiring heightened reliability in capital sentencing proceedings. *Caldwell*, 105 S.Ct. at 2639–40 & n. 2, 2642 & nn. 4–6. Our continued

---

had the benefit of an attorney and a jury trial and had been advised of his rights at the time of his arrest. Sentencing Hearing T. (Tr.) at 878–79. Conger thus argued that the death sentence was appropriate because, until the sentencing hearing, Tucker had received due process of law.

*See Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978) ("For an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' ").

use of *Strickland* in this context is inconsistent with Supreme Court precedent.[2]

## III. APPLYING THE CORRECT LEGAL STANDARD TO THE PROSECUTORIAL MISCONDUCT

### A. *The* Caldwell v. Mississippi *Decision*

The Supreme Court has reiterated on several occasions that "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *California v. Ramos,* 463 U.S. 992, 998–99, 103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171 (1983). This requirement is firmly rooted in the eighth amendment. *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion). *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) clarified one of the specific limitations on prosecutorial closing arguments and was the first instance in which the Supreme Court addressed the standard for assessing claims of improper prosecutorial argument at the penalty phase of a capital trial.

In *Caldwell* the Supreme Court found that a Mississippi prosecutor, through his argument to the jury that its decision would be automatically reviewed by an appellate court, had "sought to minimize the jury's sense of responsibility for determining the appropriateness of death." 105 S.Ct. at 2646. The Court held that because it could not say that "this effort had no effect on the sentencing decision," that decision did not meet the eighth amendment requirement of capital sentencing reliability and had to be vacated. *Id.* Contrasting the fundamental fairness inquiry of *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), the Court indicated that the state's burden to establish that prosecutorial misconduct did not constitute fundamental unfairness is heaviest where a specific constitutional safeguard, such as the eighth amendment's heightened reliability requirement of determinations to impose a capital sentence, has been compromised. 105 S.Ct. at 2645.

The Supreme Court clarified the reach of *Caldwell* and *Donnelly* in *Darden v. Wainwright,* — U.S. —, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The Court indicated that the *Donnelly* inquiry as to whether "the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" is still the relevant question when reviewing claims of prosecutorial misconduct at the guilt phase of a trial. The *Darden* majority expressly noted that it did not apply the heightened eighth amendment standard of *Caldwell* because Darden's claim involved misconduct only at the *guilt* phase of the trial and not at the *sentencing* phase. *Darden,* 106 S.Ct. at 2473 n. 15. The Court also noted that the prosecutorial arguments that Darden challenged had not trivialized the role of the jury as had the invalid arguments in *Caldwell. Id.*

Unlike *Darden,* however, the principles of *Caldwell* are directly applicable here. Tucker challenges comments by the prosecutor during the sentencing phase of his trial, comments that trivialized the jury's responsibility for the sentencing decision. Hence, the heightened reliability in capital sentencing, required by the eighth amendment, was compromised. Unlike *Darden* and *Donnelly,* this case concerns the denial of eighth amendment protection, and therefore this court's fundamental fairness inquiry entails the enhanced scrutiny required of cases "in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights." *Donnelly,* 416 U.S. at 643, 94 S.Ct. at 1871. As the *Caldwell* Court framed the inquiry, this court's role is to determine whether the state's effort to minimize the jury's sense of responsibility for determining the appropriateness of a death sentence in this case had no effect on the sentencing decision.

---

**2.** I do not agree with the majority's assumption that the precedential reach of *Caldwell* is limited to cases involving improper jury instructions.

## B. The Effect of the Prosecutor's Comments Analyzed Pursuant to Caldwell

The central theme of the prosecutor's argument at Tucker's sentencing proceeding falls squarely within the category of arguments prohibited by *Caldwell*. The principal thrust of the argument was that the jury did not have an especially significant responsibility in sentencing the defendant to death, but was only one of numerous decisionmakers. The prosecutor's closing argument directly invited the jury to focus on other decisionmakers and to feel that the responsibility for determining the appropriate sentence rested elsewhere:

> But I for one want to tell you that you are not the ones who do it if he's executed. *It does not rest on your shoulders, ladies and gentlemen.* Policemen did their duty and they went out and made the case. The Grand Jury down there did its duty and it indicted him and charged him with these horrible offenses. The District Attorney's Office prosecuted the case, located the witnesses and brought them in. The Judge, the Court came in and presided at the trial. And ladies and gentlemen, you are the last link in this thing, and *if this man suffers the death penalty it's no more up to you than it is to anybody else,* the Grand Jury, or the police, or the District Attorney's Office. All of us are coming in and doing our duty.

Tr. at 887 (emphasis added).

The prosecutor also emphasized the care with which his office selected cases in which to seek the death penalty:

> Now, ladies and gentlemen, I've been here a number of years in the District Attorney's Office and I've tried a number of cases, many cases as a matter of fact, and the death penalty is seldom requested in Columbus, it's very infre-

quently requested. And since I've been here, it's been requested as a matter of fact, in the five years I've been here, something less than a dozen times. It's not very often that we come in here and ask you to bring in a verdict of a death sentence on an individual.

Tr. at 877.[3]

The prosecutor's characterization of the District Attorney's Office as the state's specialist in ferreting out cases appropriate for the death penalty could only have been intended to encourage the jury to rely on that office's selection of Tucker as an appropriate candidate for the death sentence rather than undertaking an individualized examination of the case itself. The prosecutor reinforced this argument in other comments. Instead of presenting a clear explanation to the jury of the factors it should consider, the prosecutor couched his whole presentation in terms of the factors that the state authorities had considered in deciding that Tucker deserved the death penalty: "And there, of course, are a number of factors we look at when we consider bringing in a case and asking for a death sentence on it." Tr. at 877. "Now, ladies and gentlemen, when we ask for a death sentence, as we are doing in this case, we consider a number of things, as I've already mentioned. Tr. at 880. In sum, the prosecutor urged the jury to regard the sentencing decision as a fait accompli—the decision that Tucker deserved the death penalty had already been made by a responsible legal authority. As in *Caldwell,* the improper comments here were "focused, unambiguous, and strong," and "sought to give the jury a view of its role in the capital sentencing procedure that was fundamentally incompatible with the Eighth Amendment." 105 S.Ct. at 2645.

As in *Caldwell,* the trial court did not give strong curative instructions.[4] In fact,

---

**3.** The record below reveals that Tucker's case was the *tenth* case within the preceding *sixteen months* in which the prosecutor's office had sought the death sentence. See Petitioner's Exhibit Seven, The Columbus Ledger at B–1 (Dec. 3, 1977). Even if the prosecutor's statement was technically correct and his office had only sought the death penalty once in the first three years and eight months of his tenure, his statement was undeniably misleading.

**4.** I cannot agree with the majority's observation that "the trial judge in this case correctly in-

the instructions given by the court to Tucker's sentencing jury exacerbated the effect of the improper comments. As noted above, the court stated several times that the jury's decision would be a recommendation and thus underscored the prosecutor's argument minimizing the jury's responsibility for the verdict.[5] Even though the court's instructions may not have constituted reversible error in and of themselves, they increased the possibility that the prosecutor's improper argument affected the jury's sense of responsibility for the sentencing decision. In any event, the trial court did not give *any* curative instructions similar to those considered by the Supreme Court in *Donnelly* in determining that the prosecutorial error there was harmless.[6]

Finally, we must consider the effect of the comments minimizing the jury's responsibility in light of the overall circumstances of the sentencing phase. First, the comments were *not* an invited response to an argument by the defendant. This factor, which has been considered in cases of prosecutorial misconduct at the guilt phase, *see, e.g., Darden,* 106 S.Ct. at 2471; *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), cannot excuse the misconduct in this case where the prosecutor's argument did not respond to the evidence

presented by Tucker and preceded Tucker's closing argument. Second, and more important, the prosecution's other improper arguments increased the probability that the comments had an effect on the sentencing decision. There was persistent prosecutorial misconduct throughout the closing argument which violated the canons of professional responsibility as well as judicial precedent. Conger repeatedly presented irrelevant and inflammatory argument to the sentencing jury. Judge Johnson, in his opinion for the original panel in this case, 724 F.2d 882 (11th Cir.1984), and Judge Clark, in his dissenting opinion in the first en banc consideration of this case, 762 F.2d 1480, 1491 (11th Cir.1985), discussed at length the numerous improprieties in the other arguments advanced at the sentencing hearing by the prosecution. I will not revisit all of those improprieties here.

Several of these other arguments, such as the focus on the victim's character as opposed to Tucker's and the emphasis on the taxpayers' money that would support Tucker in prison, drew the jury's attention away from the narrowly channeled discretion that must attend a decision to impose the death sentence. *See Zant v. Stephens,*

---

structed the jury and did not put his imprimatur on erroneous information." As previously noted, the court's brief charge six times erroneously suggested to the jury that its verdict was merely advisory. Moreover, in considering the effect of erroneous jury instructions, we do not examine for a judicial imprimatur on erroneous information. In *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Court indicated that the correct standard for reviewing improper instructions is whether a reasonable juror *could* have interpreted the instruction in a manner inconsistent with the Constitution. 105 S.Ct. at 1975 n. 8. *Franklin* further teaches that a defective charge is not rehabilitated by a subsequent correct charge: a charge must unambiguously reject the defective charge and state the law correctly. *Id.* I believe the same analysis applies in capital sentencing proceedings. It is not enough that a capital sentencing charge remain silent in the face of opposing counsels' misstatements of the law: the trial court must clearly reject the misstatements and unambiguously instruct as to the proper legal standard. *See Donnelly,* 416 U.S. at 644, 94 S.Ct. at 1872 ("trial court took special

pains to correct" prosecution's misleading argument). Here, the court did not reject the prosecution's argument negating the jury's responsibility and further compounded its error by suggesting that the jury's verdict was merely a "recommendation" and hence nonbinding.

5. Although O.C.G.A. § 17-10-31 provides that the death penalty shall not be imposed unless the jury *finds* an aggravating circumstance and *recommends* the death penalty, the jury's sentencing verdict is not advisory. The Georgia trial court *must* pronounce the sentence determined by the jury.

6. In *Donnelly* the prosecution improperly argued at the guilt phase that the defense wanted a conviction on a lesser included offense. The trial court unambiguously instructed the jury that it could not consider this argument. 416 U.S. at 640-41, 94 S.Ct. at 1870. Thus even if *Donnelly* controls here, I do not agree with the majority's conclusion that the *Tucker* trial instructions negated the prosecutorial misconduct.

462 U.S. 862, 876–77, 103 S.Ct. 2733, 2742–43, 77 L.Ed.2d 235 (1983) (consensus of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) was that sentencing discretion must be suitably limited to minimize the risk of arbitrary action).[7] Moreover, unlike the state's case of aggravation in *Caldwell* which included four aggravating factors, including two prior convictions for armed robberies, here the state presented only one aggravating factor: the murder was committed during the commission of another capital felony, kidnapping with bodily injury. The state relied on the facts surrounding the one instance of serious criminal behavior. In mitigation, however, there was evidence presented as to several aspects of Tucker's character and record. Perhaps most significantly, the defense pointed out that Tucker did not have a previous criminal record.

Applying the *Caldwell* standard, I cannot say that the prosecutor's effort to minimize the jury's sense of responsibility for determining the appropriateness of death "had no effect on the sentencing decision." *Caldwell,* 105 S.Ct. at 2646. Accordingly, Tucker's sentence "does not meet the standard of reliability that the Eighth Amendment requires," *id.,* and I respectfully dissent.

---

**7.** At sentencing the relevant issue is not whether there was overwhelming evidence of guilt. Rather, once a guilty verdict has been entered, a Georgia jury's attention must turn to determining what aggravating factors, if any, exist, and to assessing the appropriateness of a death sentence in light of "the character and record of the individual offender and the circumstances of the particular offense." *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991. Thus Conger's repeated expression of his opinion that the evidence of Tucker's guilt was overwhelming further misled the jury from its task at the sentencing hearing.