This is an appeal from the denial of a petition for post-conviction relief.
In 1978, Jesse Lee Morrison was convicted and sentenced to death for the intentional killing and robbery of Marguerite McClenny in Eufaula, Alabama. This conviction was ultimately reversed on appeal. Ex parte Morrison, 398 So.2d 751 (Ala. 1981).
On remand, Morrison was again convicted and sentenced to death. That conviction and sentence were affirmed on appeal.Morrison v. State, 500 So.2d 36 (Ala.Cr.App. 1985), affirmed,Ex parte Morrison, 500 So.2d 57 (Ala. 1986), cert. denied,481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987).
In August of 1987, Morrison filed a pro se petition for post-conviction relief under Rule 20, A.R.Cr.P.Temp., which was amended in October of 1987. Counsel was appointed to represent Morrison. In February of 1988, Morrison, through counsel, filed a second Rule 20 petition, which was amended in April and June of 1988. Apparently, the second petition was treated as a restatement and refinement of the original petition.
After an evidentiary hearing, the circuit court denied the petition and issued a written memorandum opinion on July 15, 1988. This appeal is from the denial of that petition.
 I
Morrison contends that the circuit court's wholesale adoption of the State's proposed findings of fact and conclusions of law was improper.
This precise issue was decided unfavorably to the petitioner in Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 572,105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), wherein the United States Supreme Court held "that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."
 " '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *Page 437 United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). . . . If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606
(1982)." Id, 470 U.S. at 57374, 105 S.Ct. at 1511.
A review of the record reveals that the court's findings of fact and conclusions of law are supported by the evidence and are, therefore, not clearly erroneous. Accordingly, the circuit court's adoption of these findings and conclusions was proper.
Although Morrison objected and stated that he "would oppose permission to submit proposed findings of facts [because that] is the exclusive province of the court," he never objected to the Circuit Court's order denying the petition. Therefore, in addition to finding that this claim is without merit, we also find that this issue has not been preserved for review.
 II
The circuit court properly found that Morrison was procedurally barred from raising the following issues: (1) prosecutor's comments during final argument to the jury, (2) prosecutor's alleged racially discriminatory use of his peremptory jury strikes, and (3) district attorney's alleged disqualification to act as a prosecutor. There was no objection to any of these matters at trial or on direct appeal. Rule 20.2(a), A.R.Cr.P.Temp., specifically provides: "A petitioner will not be given relief under this rule based upon any ground: * * * (3) which could have been but was not raised at trial, . . .; or * * * (5) which could have been but was not raised on appeal. . . ."
 III
Morrison claims that he was denied the effective representation of both trial and appellate counsel because counsel was inexperienced and failed to properly preserve for appeal or make objection to certain matters at trial.
 A.
Morrison was represented at trial and on appeal by attorney Donald J. McKinnon. Morrison now claims that McKinnon did not have "no less than five years' prior experience in the active practice of criminal law" as required by Ala. Code 1975, §13A-5-54. This particular allegation is made for the first time on the appeal of the denial of the petition for post-conviction relief. It was not a ground of the petition or amended petition. A petitioner for post-conviction relief may not raise on appeal grounds not presented in the petition or presented at the hearing on the petition. McKinnon was initially retained to represent Morrison at his first trial in 1978. He was appointed to represent him on retrial, which occurred in September of 1983. At that time, McKinnon had represented Morrison for more than five and one-half years, and had been engaged in the private practice of law since August of 1976. McKinnon testified that in 1983 approximately ten to fifteen percent of his legal practice involved criminal law.
 B.
Morrison alleges that McKinnon was ineffective at trial because (1) he failed to seek the disqualification of the district attorney, (2) failed to conduct an adequate jury voir dire, (3) failed to object to the prosecutor's racially discriminatory use of his peremptory jury strikes, (4) failed to object to the prosecutor's improper comments in closing argument, (5) failed to object to the improper comments of the trial judge, (6) failed to object to a pretrial hearing on the State's motion to allow the *Page 438 
prior testimony of an expert witness on the basis of Morrison's absence, (7) failed to attempt to have tested the operating condition of the murder weapon, (8) failed to investigate Morrison's prison records, (9) exposed Morrison's prior juvenile conviction at the penalty phase of the trial, (10) failed to develop mitigating circumstances concerning that juvenile conviction, (11) failed to prepare Morrison for questioning concerning the juvenile conviction, and (12) failed to present available mitigating evidence from Morrison's family members. (13) Morrison alleges that McKinnon was ineffective on appeal because he failed to raise the issue of the prosecutor's racially discriminatory use of peremptory challenges.
We agree with the circuit court that, under the test ofStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984) and under the particular circumstances of this case, McKinnon's omissions and commissions in representing Morrison do not constitute ineffective assistance of counsel.
(1) McKinnon was not ineffective in not seeking to disqualify the district attorney from serving as the prosecutor. The circuit court denied this claim because Morrison failed to show that McKinnon's alleged deficient performance prejudiced the defense.
 "In paragraph 7(q), Morrison alleged that McKinnon failed to move to recuse the district attorney on the ground that he was present when Morrison's confession was obtained. At trial, the prosecution presented one witness, B.J. Gatlin, who testified to the taking of the confession and the confession itself. (Tr. 13951). The defense presented two witnesses, Charles Horton (Tr. 151-54) and Green Crawford (Tr. 156-57), who testified that the written confession was incomplete in that Morrison claimed that the murder weapon accidentally fired during a scuffle with the victim. The defense witnesses did not testify that the confession was involuntary.
 "Without conceding that McKinnon's performance was deficient, Morrison is not entitled to relief on this claim because he failed to offer any proof to establish that he was prejudiced. Morrison did not present any evidence at the coram nobis hearing to show that if the district attorney had recused himself and testified, the outcome of his trial would have been different. Because Morrison has presented no evidence, he has failed to meet his burden of establishing a reasonable probability that, but for the absence of a recusal motion, the outcome of his trial would have been different."
Not only has Morrison failed to show prejudice, he has also failed to show that McKinnon's failure to seek the prosecutor's removal constituted deficient performance under Strickland v.Washington, supra. We have found no instance in the trial record where the district attorney improperly injected his personal knowledge of the facts into this case or argued to the jury facts which were not in evidence. We know of no rule, and have been cited to none, which authorizes or requires the recusal of a prosecutor in a criminal case simply because that prosecutor has a personal knowledge of the facts of the case. Compare Waldrop v. State, 424 So.2d 1345, 1347-49 (Ala.Cr.App. 1982), after remand, 462 So.2d 1021 (Ala.Cr.App. 1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985), requiring a recusal where the prosecutor testified at trial to a confession the accused made to him. Here, the district attorney was not called and did not testify as a witness. Consequently, there was no basis for his recusal. Connolly v.State, 539 So.2d 436, 438 (Ala.Cr.App. 1988).
(2) We agree with the circuit court's finding that Morrison's allegation that McKinnon's voir dire of the jury venire was inadequate is meritless. The circuit court found:
 "In paragraph 7(e), Morrison alleged that McKinnon failed to adequately voir dire the jury venire. This claim is meritless. McKinnon's performance was clearly not deficient since he conducted a thorough voir dire examination of each panel which included questions concerning possible areas of bias and prejudice. *Page 439 
(Tr. 13-18, 19-23, 25-29, 31-36, 39-44). Contrary to one of Morrison's specific allegations, McKinnon included questions about racial prejudice in his voir dire examination but received no answers. (Tr. 15, 27, 41).
 "However, the short answer to this claim is that Morrison failed to even offer evidence to show that he was prejudiced by McKinnon's voir dire examination. Because Morrison proved nothing, he failed to establish a reasonable probability that, but for McKinnon's voir dire examination, the outcome of his trial would have been different."
(3) We reject Morrison's claim that McKinnon was ineffective because he failed to object to the prosecutor's alleged racially discriminatory use of his peremptory jury strikes. The case of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), upon which Morrison's claim for relief is now based, was decided approximately two and one-half years after Morrison's 1983 trial.
We agree with the finding of the circuit court:
 "As to Morrison's claim that McKinnon was ineffective because he failed to object to the prosecution's conduct in selecting a jury, McKinnon's performance at a trial in 1983 was not deficient for failing to anticipate that the United States Supreme Court in 1986 would change the rules regarding jury selection. In Horsley v. State, 527 So.2d 1355 (Ala.Cr.App. April 12, 1988), the Court of Criminal Appeals held that lawyers at a pre-Batson v. Kentucky, [476 U.S. 79] 106 S.Ct. 1712 [90 L.Ed.2d 69] (1986), trial, who did not object to prosecution peremptory strikes of black venire members, did not render ineffective assistance. Id., Ms. op. at 4-8. The Eleventh Circuit has held that a lawyer in a 1984 trial who failed to make a Batson objection was not ineffective and noted that '[t]he problem with faulting the public defender for failing to raise a Batson objection is that Batson had not been decided yet.' Poole v. United States, 832 F.2d 561, 565 (11th Cir. 1987). The Sixth Amendment guarantees a competent lawyer not a clairvoyant one. Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir.) (Lawyers are not required to 'make arguments based on predictions as to how the law may develop.'), modified on other ground, 833 F.2d 250
(11th Cir. 1987)."
See also Cochran v. State, 548 So.2d 1062 (Ala.Cr.App. 1989).
(4) Morrison complains that McKinnon was ineffective because of his failure to object to certain comments made by the prosecutor in his closing argument to the jury.
The prosecutor's comment that life imprisonment with the possibility of parole meant that a person would be eligible for parole after ten years' imprisonment was made in direct response to the comment of defense counsel that "under a regular life sentence there would be a possibility that sometime in the future he could be paroled." The prosecutor's reply was permissible argument by counsel, Davis v. State,494 So.2d 851, 855 (Ala.Cr.App. 1986), which did not violate the principles of Ex parte Rutledge, 482 So.2d 1262 (Ala. 1984).
The prosecutor's comments that Morrison waited until after he had been caught and until after he had been arrested before he gave a statement were proper. They were permissible responses to Morrison's trial defense of having confessed and cooperated with the police investigation because he was remorseful over the accidental shooting. These arguments were not improper comment on Morrison's post-Miranda silence. See Bradley v.State, 494 So.2d 750, 766 (Ala.Cr.App. 1985), affirmed, Exparte Bradley, 494 So.2d 772 (Ala. 1986), cert. denied,Williams v. Code, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699
(1987).
Morrison objects to the prosecutor's comments on "the victim's worth and the emotional impact on the victim's family." Appellant's brief at 36. The prosecutor, in closing argument in the guilt phase of the trial, did ask the jury to imagine what the father and son "went through" that day when they found the body. He did argue *Page 440 
that this was a "working family," and that the victim was a "hard-working woman in a family run business." He did ask the jury to do justice and "be able to look this family in the eye," and to give the victim "her day in court." In his closing argument during the sentencing phase of the trial, the prosecutor did remark, "We have got a woman's life snuffed out in her middle years with no rights for no rightful cause," and had she not been killed by the defendant, the victim "would be sitting here with the family watching something else going on here today."
Morrison's present objections to these comments are based on the case of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529,96 L.Ed.2d 440 (1987), which was decided four years after Morrison's trial, and which held that a victim-impact statement describing the character and reputation of the victim and the effect of the crime on the victim and his family is not a proper sentencing consideration in a capital case. Once again, Morrison's claim that trial defense counsel was incompetent is based upon the unacceptable standards of retrospective analysis and hindsight. Defense counsel cannot be expected to "make arguments based on predictions as to how the law may develop."Elledge, 823 F.2d at 1443. Clearly, Booth does not imply that objection should be made every time the victim's name is mentioned by the prosecutor in argument to the jury. Furthermore, Morrison has completely failed to demonstrate that, but for counsel's alleged errors, the jury's verdicts or his sentence would have been different. Strickland, supra.
Morrison complains that the prosecutor urged the jury to fix the punishment at death based on a "pre-trial commitment." During closing argument, the prosecutor told the jury that they had the "intestinal fortitude to do what you took an oath that you would do . . . and looked me in the eye and said, 'We don't have any qualms about "[imposing the death penalty]." ' " On three other occasions, the prosecutor reminded the jury of the oath they took. On the final occasion, the prosecutor stated: "I feel it is incumbent upon me to remind you again, and I know that you remember, but please keep in mind your oath. Keep in mind the response or nonresponses you made to me when I asked you those questions about moral conviction, religious beliefs or scruples against capital punishment. You told me you did not have any, and in the proper case you would impose them."
Our review of the entire record and of the context in which these remarks were made convinces us that the prosecutor was merely urging the jury to return a verdict based on the facts under the applicable law as they had sworn to do.
Morrison also complains about the prosecutor's comment to "not burden the taxpayers feeding and housing this kind of fellow for the rest of his life." This objection is presented for the first time on this appeal and was not raised in the circuit court.
With regard to Morrison's arguments about his counsel's failure to object to the prosecutor's comments, the circuit court found:
 "In paragraphs 7(k), (1), (n), (o) and (q) of the third amended petition, Morrison alleged that McKinnon was ineffective because he failed to object to events at trial. Morrison failed to prove that McKinnon's performance was deficient or that he was prejudiced by McKinnon's performance.
 "In paragraph 7(k), Morrison alleged that McKinnon failed to object to unspecified prosecution argument and other unspecified prosecutorial misconduct. This allegation is insufficient on its face to entitle Morrison to relief. Temporary Rule 20.6(b) of the Alabama Rules of Criminal Procedure provides that a petition 'must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds' (emphasis added). Rule 20.6(b) further provides that a 'bare allegation that a constitutional right has been violated' will not warrant further proceedings or, it may be added, relief. *Page 441 
 "To the extent that Morrison is here referring to the same arguments as in Claim N of the third amended petition, paragraphs 47-50, he is not entitled to relief. Even if the prosecution argument was improper, McKinnon's representation of Morrison was not deficient. The Constitution 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.' Engle v. Isaac, supra, 456 U.S. [107] at 134 [102 S.Ct. 1558, 1575, 71 L.Ed.2d 783]. Even if a lawyer makes 'demonstrable errors,' he has not necessarily rendered ineffective assistance. United States v. Cronic, supra, 466 U.S. [648] at 656 [104 S.Ct. 2039, 2045, 80 L.Ed.2d 657]. The Eleventh Circuit has noted that the Sixth Amendment does not require counsel to raise 'every conceivable objection.' Griffin v. Wainwright, 760 F.2d 1505, 1513 (11th Cir. 1985), vacated on other grounds, [476 U.S. 1123] 106 S.Ct. 1992
[90 L.Ed.2d 672] (1986); see, Lindsey v. Smith, 820 F.2d 1137, 1144 (11th Cir. 1987). Every failure to object to argument does not constitute ineffective assistance of counsel. Fleming v. Kemp, 748 F.2d 1435, 1450
(11th Cir. 1984), cert. denied, [475 U.S. 1058] 106 S.Ct. 1286 [89 L.Ed.2d 593] (1986); Adams v. Wainwright, 709 F.2d 1443, 1446 (11th Cir. 1983), cert. denied, 464 U.S. 1063 [104 S.Ct. 745, 79 L.Ed.2d 203] (1984). The standard for attorney performance is not perfection but reasonableness and McKinnon's performance, even if the argument cited by Morrison was improper, was not 'outside the wide range of professionally competent assistance.' Strickland v. Washington, supra, 466 U.S. at 690 [104 S.Ct. at 2066].
 "Additionally, the brief arguments cited by Morrison did not render his trial fundamentally unfair and, thus, did not prejudice him. Given Morrison's confession, Thomas's testimony, Morrison leading the police to the location where he disposed of some of the items taken in the robbery, and his possession of the murder weapon, there is no reasonable probability that the outcome of his trial would have been different if McKinnon had objected.
"* * * *
 "In paragraph 7(n), Morrison alleged that McKinnon failed to object to prosecution argument at the penalty stage to the effect that the jury was 'committed to have "no qualms about sentencing someone to death" or otherwise exercising moral convictions or religious beliefs in determining whether Petitioner should be sentenced to death.' However, nothing in the prosecution's penalty stage argument can be read to make such an argument. Morrison cites no specific record pages and the purported quotation in paragraph 7(n) does not appear in the prosecution's penalty stage argument. * [* In his second closing argument at the guilt stage, the district attorney did argue that the jury should have no qualms about finding Morrison guilty of the capital offense and thus subject to a sentence of life without parole or death. (TR. 192) (footnote by the trial court)]
 "The sole mention of moral convictions in the prosecution's penalty stage argument was in the following passage from the penalty stage opening statement:
 "You've heard the facts, you know how this woman was killed, you know how wrong it was, you know there is only one right and just punishment and that would be death. I've reminded you of this several times, I feel it is incumbent upon me to remind you again, and I know that you remember, but please keep in mind your oath. Keep in mind the response or nonresponses you made to me when I asked you those questions about moral conviction, religious beliefs or scruples against capital punishment. You told me you did not have any, and in the proper case you would impose them. I submit to you there is no more proper case than the case we have here today.
 "(TR. 222) This is a proper argument seeking to have the jury, pursuant to their oath, decide the punishment on the facts. *Page 442 
 "The sole mention of 'qualms' in the prosecution's penalty stage argument was in the following passage:
 "And that is all I'm asking you to do, do what is right. This man hasn't done anything that is right. You shouldn't feel one qualm about sentencing him to death. It's all his fault that he is where he is right now. It is all by his own doings that he is where he is right now.
 (TR. 232) This is a proper argument urging the jury to hold Morrison responsible for his actions.
 "McKinnon's performance was not deficient because he did not object to proper argument. McKinnon was not required to raise meritless objections to render effective assistance. E.g., Palmes v. Wainwright, 725 F.2d 1511, 1523
(11th Cir.), cert. denied, 469 U.S. 873
[105 S.Ct. 227, 83 L.Ed.2d 156] (1984).
 "In paragraph 7(o) Morrison alleged that McKinnon failed to object to prosecution comments on the worth of the victim. Again, Morrison does not specify where in the two volume transcript the allegedly improper 'comments' occurred. No such 'comments' occur in the prosecution's opening statement at the penalty stage. No such 'comments' occur in the prosecution's initial closing argument at the penalty stage. No such 'comments' appear in the prosecution's final closing argument at the penalty stage. Thus, there is no basis in fact for this claim. To the extent that Morrison seeks to base this claim on purported prosecution 'comments' at the guilt stage, his claim is without any legal basis. In Booth v. Maryland, [482 U.S. 496] 107 S.Ct. 2529 [96 L.Ed.2d 440] (1987), the Supreme Court held that references to the worth of the victim are improper at the sentencing stage of a capital case."
We are confident that, absent the alleged improper remarks, the jury's decision would have been no different. Morrison's trial cannot be said to have been fundamentally unfair.Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986), cert. denied, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987). Morrison has again failed to satisfy the "but for" test of prejudice of Strickland v. Washington, supra.
(5) Morrison argues that McKinnon was ineffective because he failed to object to the statement of the trial judge contradicting State's witness James Thomas. At trial, McKinnon was attempting to impeach Thomas by eliciting testimony about his prior convictions and by showing that Thomas had gotten off "pretty easy" after having previously given testimony against Morrison. When Thomas stated that he "got three years probation providing that [he] leave Alabama," the trial judge commented, "Now, I didn't say that. I can't banish people; so, I didn't do that."
The circuit court found that "McKinnon was not ineffective because the trial judge's comment, that he could not exile persons from Alabama, could not have affected the outcome of Morrison's trial. To the extent that such remarks could have been significant, they were beneficial to Morrison in that they contradicted a prosecution witness." Although we have no doubt the trial judge should not have contradicted the witness in the manner he did, we are equally convinced that this error did not prejudice Morrison.
(6) As to Morrison's absence from a pretrial hearing to allow the State to use at Morrison's second trial the testimony of Dr. G.R. McCahan at the first trial, the circuit court found:
 "In paragraph 7(h), Morrison alleged that McKinnon failed to protect Morrison's right to be present at an unspecified pre-trial evidentiary hearing. Because Morrison was not prejudiced by his absence from a pre-trial hearing, his claim is not well founded.
 "The only pre-trial evidentiary hearing held before Morrison's second trial was a hearing on the unavailability of a witness, Dr. G.R. McCahan, who performed the autopsy on the victim. (TR. 3-8) The testimony at that hearing conclusively established that Dr. McCahan was physically unable to attend trial and Morrison was not prejudiced by his absence *Page 443 
from that hearing. Again, Morrison failed to meet his burden of showing a reasonable probability that had McKinnon objected the outcome of his trial would have been different."
We view this pretrial hearing as being in the same category as one to summon witnesses and one which was not a critical stage of trial. Therefore, Morrison had no constitutional right to be present. Johnson v. State, 335 So.2d 663, 671-72
(Ala.Cr.App.), cert. denied, 335 So.2d 678 (Ala.), cert. denied, 429 U.S. 1026, 97 S.Ct. 649, 50 L.Ed.2d 629 (1976). Moreover, any violation of Morrison's constitutional right to be present was harmless. Ex parte Stout, 547 So.2d 901 (Ala. 1989).
(7) We agree that McKinnon's failure to seek expert testimony on the operating condition of the murder weapon was sound trial strategy. The circuit court found:
 "In paragraph 7(b), Morrison alleged that McKinnon failed to seek expert assistance concerning the murder weapon's pattern of firing and jamming. The testimony at the Rule 20 evidentiary hearing establishes that McKinnon made a strategic decision to proceed as he did at trial based on his pre-trial investigation.
 "McKinnon did not seek the assistance of a firearms expert because he did not think such an expert would find evidence favorable to him. During his investigation, McKinnon learned from Morrison's sister-in-law that she had been present when the murder weapon had been fired in target practice. Morrison's sister-in-law told McKinnon that the pistol had fired once, jammed, and then fired again after the jammed round was extracted. This was identical to the testimony of the State's firearms expert. (TR. 107-09) McKinnon made a strategic decision not to seek expert assistance because he thought such an expert might only confirm that the murder weapon always fired and jammed. He chose instead to attack the reliability of the one-time occurrence to which the State's expert testified and, in fact, was successful in getting the State's witness to admit that he was not testing to determine the pistol's firing pattern. (TR. 110)
 "McKinnon's performance in choosing one strategy over the other did not render his performance deficient. The Supreme Court has recognized that such strategic decisions are virtually unchallengeable. Strickland v. Washington, supra, [466 U.S.] at 690 [104 S.Ct. at 2066].
 "Further, there is no reasonable probability that, but for the absence of expert assistance, the outcome of Morrison's trial would have been different. Even if the murder weapon did not always jam after being fired, the fact that two shell casings and one unfired round were found next to the body of the victim, who was shot twice, supports the inference that the victim was shot, then the pistol jammed, and then fired again after the jammed shell was ejected. This evidence and the testimony of James Arthur Thomas were more than sufficient to establish that Morrison intentionally shot Mrs. McClenny."
(8) Morrison contends that McKinnon was ineffective because he did not introduce evidence of Morrison's conduct as a prisoner between his first and second trials as mitigating evidence under Skipper v. South Carolina, 476 U.S. 1,106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). We agree with the findings of the circuit court:
 "Morrison also offered a certified copy of Alabama Department of Corrections records showing that, while he was on death row between his first and second trials, Morrison violated and was convicted for violating four major disciplinary rules. Morrison apparently offered this to show that McKinnon could have presented the same information at the second trial in mitigation. However, Morrison was not prejudiced by the absence of prison records proving that he had not made a successful adjustment to prison, especially where McKinnon used the more favorable testimony of Sheriff Smith to attempt to prove the same mitigating circumstance. (TR. 266-67) Introduction of these prison records would *Page 444 
only have undercut Sheriff Smith's testimony."
(9), (10), and (11) McKinnon was not ineffective in his handling of Morrison's juvenile record. The circuit court properly found as follows:
 "In paragraph 7(r) of the third amended petition, Morrison alleged that McKinnon was ineffective because he brought out Morrison's juvenile record. At the penalty stage of Morrison's 1983 trial, during the direct examination of Morrison, the following occurred:
 "[by McKinnon] Do you have any criminal convictions, Mr. Morrison?
"A. No.
 "MR. MCKINNON: Could I confer with my client just a moment?
"THE COURT: Yes, sir.
"Q. Mr. Morrison, —
"A. (Interposing) Yes?
 "Q. — on the question about criminal convictions, did you have any convictions as a juvenile?
"A. Yes.
"Q. And where was that?
"A. Rochester, New York.
 "Q. Rochester, New York. Okay. Other than that do you have any convictions?
"A. No.
 (TR. 226-27) McKinnon elicited this information as part of his attempt to show that Morrison had a troubled upbringing. He used this information for this purpose in his closing argument. (TR. 234-35)
 "McKinnon's strategic decision to elicit the fact that Morrison had been convicted as a juvenile did not render his performance deficient. In determining whether a lawyer rendered professionally reasonable assistance, 'the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' Strickland v. Washington, supra, [466 U.S.] at 690 [104 S.Ct. at 2066]. Further strategic decisions, such as McKinnon's here, are virtually unchallengeable. Id.
 "Morrison also failed to establish that he was prejudiced by the revelation that he had a juvenile record. The prosecution did not argue that, because of these juvenile convictions, Morrison had a significant prior criminal history. The trial judge found that Morrison did not have a significant history of prior criminal activity and weighed that mitigating circumstance in sentencing Morrison. (TR. 277-78) Morrison has not established a reasonable probability that, but for McKinnon eliciting the fact that Morrison had juvenile convictions, he would have been sentenced to life without parole."
(12) McKinnon was not ineffective in his representation of Morrison at the penalty phase of the trial. In this regard, the circuit court found:
 "In paragraph 7(m), Morrison alleged that McKinnon failed to adequately prepare for the penalty stage of his trial. As noted above, see p. 12, McKinnon was aware of and prepared for the penalty stage of trial. He interviewed a number of Morrison's family members and at trial presented everything they told him that was favorable to Morrison. McKinnon had difficulties in dealing with Morrison's family because many were not interested in helping Morrison. Morrison's mother was unwilling or unable to come to trial.
 "In support of this claim Morrison introduced the affidavits of his mother, sister, and an aunt. The affidavit of Virginia Morrison, his mother, is not persuasive mitigating evidence. * [* In weighing the credibility of this and other affidavits filed by Morrison, the Court has considered the fact that the State was unable to cross-examine the affiants. (Footnote by the trial court.)] The affidavit portrays Morrison as a brave small child and presents a version of Morrison's juvenile problems in a favorable light. The most truthful statement in the affidavit primarily serves to establish her strong bias, that she 'would do whatever [she] could to convince a jury that [Morrison] is someone whose life should not be taken.' *Page 445 
 "The affidavit of Geraldine Morrison, his sister, adds nothing to the mitigating evidence at trial. She states that Morrison has given her career advice and encouragement and that she loves him. The affidavit of Earlene Smith, his aunt, adds nothing to her testimony at the first trial which was considered at the sentencing hearing after the second trial.
 "McKinnon made an adequate investigation into possible mitigating evidence and presented such evidence at both of Morrison's trials. His investigation and preparation of mitigation was hindered by the fact that a number of Morrison's relatives would not cooperate. He was in contact with Morrison's mother but could not get her to testify at trial. His performance was not deficient because Morrison has now come up with additional mitigation. See, High v. Kemp, 819 F.2d 988, 994 (11th Cir. 1987) (not unusual for witnesses to appear after a defendant is convicted). Further, the affidavits are weak mitigation at best and do not establish a reasonable probability that, but for McKinnon's failure to call these witnesses, the outcome of his trial would have been different.
See also Lightbourne v. Dugger, 829 F.2d 1012, 1025-26 (11th Cir. 1987) ("This court has specifically ruled that counsel's decision to rely on the defendant's testimony rather than offering the testimony of the defendant's family members to show a 'turbulent family history' may be a reasonable strategic choice under the circumstances.").
With regard to McKinnon's representation of Morrison at the punishment-fixing and sentencing phases of his trial, we find that the observations of the court in Clark v. Dugger,834 F.2d 1561, 1568 (11th Cir. 1987), are appropriate:
 "The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir. 1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). 'After a sufficient investigation, however, "counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation." ' Lightbourne, 829 F.2d at 1025
(quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir. 1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir. 1983), cert. denied, sub nom. [Stanley v. Kemp,] 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, '[c]ounsel has no absolute duty to present mitigating character evidence.' Id. (quoting Mitchell, 762 F.2d at 889). [Counsel] conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, [counsel's] decision is 'accorded a strong presumption of correctness which is "virtually unchallengeable." ' Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir. 1987) and Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Given the alternatives . . . faced, [counsel's] handling of the penalty phase was not unreasonable. See Stanley, 697 F.2d at 958-70. We therefore conclude that there has been no showing of ineffective assistance nor prejudice to defendant in the way trial counsel prepared and tried [this] case."
(13) Morrison argues that McKinnon was ineffective in failing to raise the Batson issue on direct appeal of his conviction.
Neither the original petition nor any of its amendments contain a specific allegation that McKinnon was ineffective for failing to raise the Batson issue on appeal. In circuit court, Morrison argued that the prosecutor's use of his peremptory strikes violated Batson and that McKinnon was ineffective in failing to object to this at trial. In one of the amended petitions, Morrison merely asserted that "[t]rial counsel failed to provide effective assistance on appeal by not raising many of the issues presented in this petition. . . . Trial counsel's failure to raise these issues on appeal denied Petitioner his sixth, eighth and fourteenth amendment rights and violated *Page 446 
the state laws and Constitution of Alabama." This general allegation of ineffectiveness does not preserve for our review the specific issue now advanced.
By petition, amendment, and evidentiary hearing, Morrison raised numerous instances of counsel's alleged ineffectiveness. Because of Morrison's failing to allege and litigate this specific issue in the circuit court, we deem it waived on appeal.
Although the circuit court did not address this specific issue in its opinion (because it was not raised), it did make the following findings on the adequacy of McKinnon as appellate counsel:
 "In paragraph 7(u) of the third amended petition, Morrison alleged that McKinnon was ineffective in representing him on appeal because he did not raise 'many of the issues presented in this petition on direct appeal.' In deciding what issues to raise on appeal, McKinnon first went through the entire record for all possible issues and then selected the arguments that he thought had a chance for success. He raised 23 issues on appeal. See, Morrison v. State, 500 So.2d 36
(Ala.Cr.App. 1985), aff'd, 500 So.2d 57 (Ala. 1986).
 "Claims of ineffective assistance of appellate counsel are governed by the two part Strickland v. Washington test. Murray v. Carrier, [477] U.S. [478], 106 S.Ct. 2639, 2647
[91 L.Ed.2d 397] (1986); Smith v. Murray, [477] U.S. [527], 106 S.Ct. 2661, 2665 [91 L.Ed.2d 434] (1986). Morrison has not established that McKinnon's performance was deficient and he is not entitled to relief.
 "A lawyer is not required to raise all conceivable claims in order to render effective assistance. Lindsey v. Smith, 820 F.2d 1137, 1144
(11th Cir. 1987). It is sound strategy for a lawyer to narrow the number of issues raised on appeal. Smith v. Murray, supra, [477] U.S. at [535], 106 S.Ct. at 2667. The fact that McKinnon focused on issues other than those Morrison's current counsel has selected does not remove his representation of Morrison from the wide range of professionally competent assistance.
 "Morrison failed to establish that McKinnon rendered ineffective assistance of counsel at trial or on appeal. He is not entitled to relief on this claim."
We have considered each allegation of counsel's ineffectiveness both at trial and on appeal. We have also considered the cumulative effect of all of those alleged errors. We conclude that Morrison has failed to prove that McKinnon was ineffective under the test of Strickland v.Washington.
Almost every one of Morrison's complaints of McKinnon's alleged ineffectiveness is based on hindsight. "Reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir. 1987), cert. denied, 485 U.S. 1014, 108 S.Ct. 1487,99 L.Ed.2d 715 (1988). "Counsel's conduct must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct." Ex parte Baldwin,456 So.2d 129, 134 (Ala. 1984), affirmed, 472 U.S. 372,105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). A reviewing court must avoid the "distorting effects of hindsight" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland,466 U.S. at 689, 104 S.Ct. at 2065. See also Ex parte Lawley,512 So.2d 1370, 1372 (Ala. 1987).
The findings of the circuit court are reasonable and are supported by the record. Our review of both the proceedings on the petition for post-conviction relief and those at trial convince us that Morrison received a fair trial and was not denied effective assistance of counsel either at trial or on appeal.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 447